**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | | | |
|---|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF NEBRASKA, | ) ) ) | Case No. _____ | |
| Plaintiff, | ) ) | **COMPLAINT AND REQUEST** | |
| v. | ) ) | **FOR DECLARATORY AND INJUNCTIVE RELIEF** | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, | ) ) ) ) ) | | |
| Defendants. | ) ) | | |

## I.    INTRODUCTION

1.    This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.* for declaratory and injunctive relief seeking to compel the release of records held by the United States Citizenship and Immigration Services ("USCIS"), a component agency of the Department of Homeland Security ("DHS"), regarding communications from personnel of the City of Fremont, Nebraska and the City of Scribner, Nebraska (hereinafter "Cities") relating to implementation and enforcement of anti-immigrant ordinances enacted by the Cities, and the Cities' access to the USCIS' Systematic Alien Verification for Entitlements ("SAVE") program.

2.    On June 21, 2010, the city of Fremont, located in Dodge County, Nebraska, enacted an ordinance that requires prospective renters in Fremont to obtain occupancy licenses ("Fremont Ordinance"). A copy of the Fremont Ordinance is included as Exhibit A.

3.    The application for the occupancy license requires the prospective renter to respond to questions about their immigration status and authorizes the Fremont Police Department to enter into a Memorandum of Understanding ("MOU") with DHS to access the SAVE program, which

1

is administered by USCIS, to determine whether an individual is "lawfully present in the United States."

4.      On November 6, 2018, the city of Scribner, located in Dodge County, Nebraska passed an ordinance substantially similar to the Fremont Ordinance ("Scribner Ordinance"). A copy of the Scribner Ordinance is included as Exhibit B.

5.      On November 9, 2021, the ACLU of Nebraska (ACLU-NE) submitted a FOIA request ("Request") to USCIS seeking records of emails and letters between officials, agents, contractors, or individuals on behalf of the Cities and DHS-USCIS regarding implementation or enforcement of the Fremont Ordinance and the Scribner Ordinance (altogether, the "Ordinances"). A copy of the Request is included as Exhibit C. The Request also seeks records of all of the Cities' MOUs, including approved and executed MOUs, to register with or access the SAVE program.

6.      To date, USCIS has failed to respond to produce the documents sought in the Request in any way, let alone process the Request "promptly," as required by FOIA for all requests.[1]

7.      ACLU-NE seeks the responsive documents to the Request to further public understanding of the implementation and enforcement of the Ordinances.

8.      Plaintiff now files suit under FOIA for declaratory and injunctive relief, seeking the immediate release of the records within the contours of its Request.

## II.      JURISDICTION AND VENUE

9.      This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

10.      This Court has jurisdiction to grant declaratory and further proper relief pursuant to 5 U.S.C. § 552(a)(4)(B), 28 U.S.C. §§ 2201-2202 and FED. R. CIV. P. 57 and 65.

---

[1] *See* 5 U.S.C. § 552(a)(3)(A).

11.     Venue lies in this District under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because Plaintiff ACLU-NE resides in this district.

### III.     PARTIES

12.     Plaintiff ACLU-NE is a non-profit, nonpartisan 26 U.S.C. § 501(c)(4) organization dedicated to the constitutional principles of liberty and equity.

13.     Plaintiff ACLU-NE is an affiliate of the American Civil Liberties Union ("ACLU"). The ACLU is committed to ensuring that the American government complies with the U.S. Constitution and laws in matters that affect civil liberties and human rights. The ACLU is also committed to the principles of government transparency and accountability and seeks to ensure that the American public is informed about the conduct of its government in matters that affect civil liberties and human rights.

14.     ACLU-NE is "primarily engaged in disseminating information" within the meaning of FOIA.[2] Obtaining information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public are critical and substantial components of the ACLU-NE's work and are among its primary activities.[3]

15.      ACLU-NE does this work alone and with our national partners and allies. ACLU-NE has two full-time communications specialists, and all its attorneys are regularly called upon to write reports, give public and private educational presentations, or give interviews. ACLU-NE regularly creates and disseminates works in the form of presentations, reports, articles,

---

[2] 5 U.S.C. § 552(a)(6)(E)(v)(II); *see also* 6 C.F.R. § 5.5(e)(1)(ii).

[3] *See ACLU v. U.S. Dep't of Justice,* 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (quoting *EPIC v. Dep't of Defense,* 241 F.Supp.2d 5, 11 (D.D.C. 2003)) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be primarily engaged in disseminating information); *see also Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.,* 498 F. Supp. 3d 87, 98 (D.D.C. 2020); *Protect Democracy Project, Inc. v. U.S. Dep't of Def.,* 263 F. Supp. 3d 293, 298-99 (D.D.C. 2017); *Leadership Conf. on C.R. v. Gonzales,* 404 F. Supp. 2d 246, 260 (D.D.C. 2005).

3

interviews, testimony, social media, and blog posts to educate the public about the activities of the United States government. ACLU-NE also regularly publishes "know your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and civil liberties. These materials are intended to be educational and widely disseminated to the public. The ACLU-NE website had over 266,000 unique views in 2023 and 6 of its top 20 most viewed pages in 2023 were news, "know your rights" articles, or press releases.

16.     ACLU-NE maintains a principal place of business in Lincoln, Nebraska.

17.      Defendant USCIS is a component of DHS and an agency within the meaning of 5 U.S.C. § 552(f).

18.     Defendant USCIS was founded in 2003 to administer immigration benefit applications[4] and currently also administers and provides training, support, and services to participating agencies utilizing the SAVE program.[5] USCIS is headquartered in Camp Springs, Maryland. USCIS is a component of DHS.

19.     Defendant DHS was founded in 2003. DHS is headquartered in Washington, D.C.

### IV.     STATEMENT OF FACTS

***The Fremont Ordinance and Scribner Ordinance***

20.     On June 21, 2010, the City of Fremont, located in Dodge County, Nebraska, enacted the Fremont Ordinance.

21.     The Fremont Ordinance requires prospective renters in Fremont to answer questions about their immigration status.[6] If the prospective renter attests that they are not a U.S. citizen or unsure of their immigration status, and cannot provide documentation of lawful presence,

---

[4] USCIS Policy Manual Vol. 1 Part A, Ch. 1, https://www.uscis.gov/policy-manual/volume-1-part-a-chapter-1.
[5] USCIS, *SAVE*, last visited July 9, 2024, https://www.uscis.gov/save.
[6] *See* Ex. A at A-4.

then the Fremont Ordinance tasks the Fremont Police Department with ascertaining from the federal government "whether the occupant is an alien lawfully present in the United States."[7]

22.     The Fremont Police Department may enter into a MOU with DHS to access the SAVE program.[8]

23.     The SAVE program is administered by USCIS.[9]

24.     On November 6, 2018, the city of Scribner, Nebraska passed the Scribner Ordinance, an ordinance substantially similar to the Fremont Ordinance.

25.     Disclosure of the requested documents is necessary for full and fair public understanding of implementation and enforcement of the Ordinances.

### Plaintiff's FOIA Request

26.     On November 9, 2021, Plaintiff submitted the Request to USCIS National Records Center via e-mail to uscis.foia@uscis.dhs.gov.

27.     Plaintiff sought a waiver or reduction of fees because the disclosure of the requested records is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[10] Plaintiff also sought limitation of fees because Plaintiff qualifies as a "representative of the news media" and the records are not sought for commercial use.[11]

28.     Plaintiff sought expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) because Plaintiff is "primarily engaged in disseminating information" and the requested information is

---

[7] *See id.* at A-5.

[8] *Id*.

[9] *See* USCIS, *SAVE*, last visited July 9, 2024, https://www.uscis.gov/save.

[10] 5 U.S.C. § 552(a)(4)(A)(iii); *see also* 5 U.S.C. § 552(a)(4)(A)(ii)(III); 6 C.F.R. § 5.11(k)(2)-(3).

[11] 5 U.S.C. § 552(a)(4)(A)(ii)(II); *see also* 6 C.F.R. § 5.11(k).

needed "urgen[tly]… to inform the public concerning actual or alleged Federal Government activity."[12]

29.     On November 10, 2021, Plaintiff received an email providing the Request control number COW2021004654 and requesting clarification of the records sought within thirty working days. This request for clarification is attached as Exhibit D.

30.     On December 6, 2021, less than thirty working days since Defendant's request for clarification, Plaintiff responded with a clarification of the documents sought. This clarification is attached as Exhibit E.

31.     On December 6, 2021, Defendant sent an automatic response notification via email indicating it had received the clarification. This automatic response is attached as Exhibit F.

32.     On January 10, 2022, Plaintiff sent an email to foiapaquestions@uscis.dhs.gov and foiasig.nrc@uscis.dhs.gov seeking a response to the Request. This follow-up is attached as Exhibit G. Plaintiff did not receive a response to its follow up.

33.     Plaintiff has not received further communications from Defendants since receiving the auto response on December 6, 2021 and has not received any portion of the records described in the Request.

34.     The twenty-day statutory period to respond to Plaintiff's request[13] has elapsed with no response or determination from Defendants.

35.     Defendants have neither released the requested records nor explained their failure to do so.

36.     Because Defendants have failed to respond to Plaintiff's Request within the applicable statutory and regulatory periods, any administrative remedies are deemed exhausted.[14]

---

[12] 5 U.S.C. § 552(a)(6)(E)(v)(II); *see also* 6 C.F.R. § 5.5(e)(1)(ii).
[13] *See* 5 U.S.C. (a)(6)(A)(i).
[14] 5 U.S.C. § 552(a)(6)(C)(i).

37.     Plaintiff faces ongoing and irreparable harm by Defendants' failure to provide a timely response to their Request.

## V.      CLAIMS

### FIRST CLAIM

**Violation of the Freedom of Information Act, 5 U.S.C. § 552:**
**Failure to Conduct an Adequate Search for Responsive Records**

38.     Plaintiff incorporates each and every allegation contained in the preceding paragraphs.

39.     Defendants have custody and control over the records Plaintiff seeks to make publicly available under 5 U.S.C. § 552(a)(2); 6 C.F.R. § 5.4 *et seq.*

40.     Defendants are obligated under 5 U.S.C. § 552(a)(3) to conduct a reasonable search for records responsive to Plaintiff's Request. Defendants failed to conduct such a search.

41.     Defendants possess the records Plaintiff seeks and Plaintiff has a legal right to obtain such records. No legal basis exists for Defendants' failure to search for such records.

42.     Defendants' failure to conduct a reasonable search for records responsive to Plaintiff's Request violates 5 U.S.C. § 552(a)(3).

### SECOND CLAIM

**Violation of the Freedom of Information Act, 5 U.S.C. § 552:**
**Failure to Make a Determination and Promptly Produce Responsive Documents**

43.     Plaintiff incorporates each and every allegation contained in the preceding paragraphs.

44.     Defendants are obligated under 5 U.S.C. § 552(a)(6)(A)(i) to make a determination on Plaintiff's Request within twenty business days. In unusual circumstances, Defendant may invoke an extension no longer than ten days under 5 U.S.C. § 552(a)(6)(B)(i).

45.     Defendants have failed to make a determination within thirty days, the maximum amount of time permitted under the statute.

46.     Defendants are obligated to produce responsive records under 5 U.S.C. § 552(a)(3)(A).

47.     Defendants have failed to promptly produce responsive records.

48.     Defendants' failure to make a determination within the statutory time frame and produce responsive records promptly violates 5 U.S.C. §§ 552(a)(3)(A) and (a)(6)(A)(i).

## VI.     RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that the Court:

a.  Order Defendants to conduct a search for records responsive to the Request filed by Plaintiffs under 5 U.S.C. § 552(a)(3);

b.  Order Defendants to produce all records responsive to Plaintiff's Request promptly or on an expedited schedule established by the Court;

c.  Enjoin Defendants from improperly withholding records;

d.  Declare that Defendants' failure to conduct an adequate search violates 5 U.S.C. § 552(a)(3);

e.  Declare that Defendants' failure to promptly produce records responsive to Plaintiff's Request violates 5 U.S.C. §§ 552(a)(3)(A) and (a)(6)(A)(i);

f.  Award Plaintiff reasonable attorneys' fees and other litigation costs pursuant to 5 U.S.C. § 552(a)(4)(E) and any other applicable statute or regulation; and

g.  Grant such other relief as the Court may deem just, equitable, and appropriate.

Dated this 9th day of July, 2024.

American Civil Liberties Union Foundation of Nebraska, Plaintiff

By:     /s/ *Dylan Severino*
        Dylan Severino, No. 27932
        Rose Godinez, No. 25925
        American Civil Liberties Union
        Foundation of Nebraska, Inc.
        134 S 13th Street, Suite 1010
        Lincoln, Nebraska 68508
        (402) 476-8091
        dseverino@aclunebraska.org
        rgodinez@aclunebraska.org
        *Attorneys for Plaintiff*



**ORDINANCE NO. 5165**

**AN ORDINANCE OF THE CITY OF FREMONT, NEBRASKA, AMENDING THE FREMONT MUNICIPAL CODE, ORDINANCE NO. 3139 TO PROHIBIT THE HARBORING OF ILLEGAL ALIENS OR HIRING OF UNAUTHORIZED ALIENS, PROVIDING DEFINITIONS, MAKING PROVISION FOR OCCUPANCY LICENSES, PROVIDING JUDICIAL PROCESS, REPEALING CONFLICTING PROVISIONS, AND ESTABLISHING AN EFFECTIVE DATE FOR THIS ORDINANCE.**

WHEREAS, Federal law requires that certain conditions be met before an alien may be authorized to be lawfully present in the United States. Those conditions are found principally at United States Code Title 8, Section 1101, et. seq., and;

WHEREAS, United States Code Title 8, Section 1324(a)(1)(A) prohibits the harboring of illegal aliens. The provision of housing to illegal aliens is a fundamental component of the federal immigration crime of harboring, and;

WHEREAS, United States Code Title 8, Section 1324a prohibits the knowing employment of unauthorized aliens; and United States Code Title 8, Section 1324a(h)(2) permits state and local governments to suspend the business licenses of those who employ unauthorized aliens, and;

WHEREAS, The presence of illegal aliens places a fiscal burden on the City, increasing the demand for, and cost of, public benefits and services, and;

WHEREAS, Crimes committed by illegal aliens in the City harm the health, safety and welfare of U.S. citizens and aliens lawfully present in the United States, and;

WHEREAS, The employment of unauthorized aliens in the City displaces authorized United States workers and adversely affects their wages, and;

WHEREAS, In 1996 Congress amended the Immigration and Nationality Act to require the federal government to verify the immigration status of any alien upon the request of a state, county, or municipality, for any purpose authorized by law. United States Code Title 8, Section 1373(c). The federal government has established several systems to accomplish this obligation, including the Systematic Alien Verification for Entitlements (SAVE) Program and the Law Enforcement Support Center (LESC), and;

WHEREAS, This Ordinance is in harmony with the congressional objectives of prohibiting the knowing harboring of illegal aliens and prohibiting the knowing employment of unauthorized aliens, and;

WHEREAS, The Secretary of the U.S. Department of Homeland Security has specifically praised and encouraged those states and localities that require employers to participate in the E-Verify Program, and;

WHEREAS, The City of Fremont shall not construe this ordinance to prohibit the rendering of emergency medical care, emergency assistance, or legal assistance to any person.

**BE IT THEREFORE ORDAINED BY THE MAYOR AND COUNCIL OF THE CITY OF FREMONT, NEBRASKA:**

**SECTION 1.** That a new section §6-428 be added to the Fremont Municipal Code Ordinance No. 3139 to provide as follows:

A-1

**§6-428 Harboring or Hiring Illegal Aliens, Prohibited.**

**1. DEFINITIONS:** For the purposes of this Ordinance, the following terms and phrases shall have the meanings ascribed to them herein, and shall be construed so as to be consistent with state and federal law, including federal immigration law:

A.  *Illegal alien* means an alien who is not lawfully present in the United States, according to the terms of United States Code Title 8, Section 1101 et seq. The City shall not conclude that an individual is an illegal alien unless and until an authorized representative of the City has verified with the federal government, pursuant to United State Code Title 8, Section 1373(c), such individual's immigration status.

B.  *Unlawfully present in the United States* means unlawfully present in the United States according to the terms of United States Code Title 8, Section 1101 et seq. The City shall not conclude that an alien is unlawfully present in the United States unless and until an authorized representative of the City has verified with the federal government, pursuant to United States Code Title 8, Section 1373 (c), such alien's immigration status.

C.  *Dwelling unit* means a single residential unit with living facilities for one or more persons, including space for living, sleeping, eating, cooking, bathing and sanitation, whether furnished or unfurnished, that is let or rented for valuable consideration. There may be more than one rental unit on a premise. In a multifamily residence or apartment building, each residential unit or apartment constitutes a separate dwelling unit. The term dwelling unit does not include a dormitory room at a postsecondary educational institution, a room at a shelter for the homeless or the abused, or a hotel room.

D.  *Lessor* means a person who leases or rents a dwelling unit as, or on behalf of, a landlord.

E.  *Occupant* means a person, age 18 or older, who resides at a dwelling unit. A temporary guest of an occupant is not an occupant for the purposes of this ordinance.

F.  *Unauthorized alien* means an alien who does not have authorization of employment in the United States, as defined by United States Code Title 8, Section 1324a(h)(3). The City shall not conclude that an individual is an unauthorized alien unless and until an authorized representative of the City has verified with the federal government, pursuant to United States Code Title 8, Section 1373(c), such individual's lack of authorization of employment in the United States.

G.  *Business entity* means any person, group of persons, partnership or corporation that engages in any activity, enterprise, profession or occupation for financial gain, benefit, or livelihood, and shall include all such activities, enterprises, professions, or occupations, whether preformed in one or more establishments by one or more corporate or other organizational units, including departments or establishments operated through leasing arrangements, whether for profit or not-for-profit. The term business entity shall include but not be limited to contractors, subcontractors, self-employed individuals, partnerships, and corporations. The term business entity shall include both business entities that are required to obtain a license or permit to conduct business in the City of Fremont, and businesses that are not required to obtain a license or permit to conduct business in the City of Fremont.

H.  *Work* means any job, task, employment, labor, personal services, or any other activity for which compensation is provided, expected, or due, including but not limited to all activities conducted by business entities.

A-2

I.     ***E-Verify Program*** means the electronic verification of employment authorization program of the Illegal Immigration Reform and Immigration Responsibility Act of 1996, P.L. 104-208, United States Code Title 8, Section 1324a, and operated by the United States Department of Homeland Security (or a successor program established by the federal government).

J.     **Systematic Alien Verification for Entitlements (SAVE) Program** means the electronic program created pursuant to the Immigration Reform and Control Act of 1986 (IRCA), P.L. 99-603, and the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), P.L. 104193, which enables a federal, state, or local government entity to confirm with the United States Department of Homeland Security an alien's immigration status (or a successor program or method of confirmation of immigration status established by the federal government).

K.     ***Business license*** means any license, permit, occupation tax registration, business registration, or registration certification issued to a business entity by the City, including but not limited to all such licenses and permits described under the Fremont Municipal Code, Ordinance No. 3139.

L.     ***City*** means the City of Fremont, Nebraska.

## 2. HARBORING ILLEGAL ALIENS:

A. It is unlawful for any person or business entity that owns a dwelling unit in the City to harbor an illegal alien in the dwelling unit, knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, unless such harboring is otherwise expressly permitted by federal law.

1.     For the purpose of this section, to let, lease, or rent a dwelling unit to an illegal alien, knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, shall be deemed to constitute harboring. To suffer or permit the occupancy of the dwelling unit by an illegal alien, knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, shall also be deemed to constitute harboring.

2.     Condition of lease. An occupant may not enter into a contract for the rental or lease of a dwelling unit in the City unless the occupant is either a U.S. citizen or national, or an alien lawfully present in the United States according to the terms of United States Code Title 8, Section 1101 et seq. An occupant who is neither a U.S. citizen or national, nor an alien lawfully present in the United States, who enters into such a contract shall be deemed to have breached a condition of the lease. An occupant who is an alien who subsequent to the beginning of his lease becomes unlawfully present in the United States shall be deemed to have breached a condition of the lease.

3.     Prospective Application Only. This Ordinance shall apply only to contracts to let, lease, or rent dwelling units that are entered into and tenancies that begin after the date that the Ordinance becomes effective.

4.     The legal obligations imposed by this Section shall be enforced through the process described in Provisions 3 and 4 of this Ordinance, below.

## 3. ISSUANCE OF OCCUPANCY LICENSES:

A. Prior to occupying any leased or rented dwelling unit, each occupant, age 18 or older, must obtain an occupancy license.

B. It is the occupant's responsibility to submit an occupancy license application to the Fremont Police Department, pay a fee of $5 to the City, and obtain an occupancy license. If there are multiple occupants seeking to occupy a single rental unit, each occupant must obtain his or her own license. An applicant for an occupancy license may designate the owner or manager of the dwelling unit as his agent to collect the required information and submit the required application form(s), signed by the applicant, to the Fremont Police Department on the applicant's behalf. The City may establish a procedure whereby an applicant (or designated owner or agent) may submit the required application form(s), signed by the applicant, via facsimile or website portal.

C. The owner or manager of any dwelling unit must notify each prospective occupant of this requirement and shall not permit occupancy of a dwelling unit unless the occupant first obtains an occupancy license.

D. Each occupancy license is valid only for the occupant for as long as the occupant continues to occupy the dwelling unit for which such license was applied. Any relocation to a different dwelling unit requires a new occupancy license.

E. Applications for occupancy licenses shall be made upon forms furnished by the City for such purposes and shall require the following information:

      (1)   Full legal name of occupant;
      (2)   Mailing address of occupant;
      (3)   Address of dwelling unit for which occupant is applying, if different from mailing address;
      (4)   Name and business address of dwelling unit owner or manager;
      (5)   Date of lease commencement;
      (6)   Date of birth of occupant;
      (7)   Occupant's country or citizenship;
      (8)   Full legal name and date of birth of each minor dependent residing with occupant;
      (9)   (a) *in cases in which the applicant is a United States citizen or national, a* signed declaration that the applicant is a United States citizen or national on a form provided by the City, which notifies the applicant that knowingly making any false statement or claim that he or she is, or at any time has been, a citizen or national of the United States, with the intent to obtain a state benefit or service is a crime under United States Code Title 18, Section 1015(e);

                            or

      *(b) in cases in which the applicant is not a United States citizen or national,* an identification number assigned by the federal government that the occupant believes establishes his lawful presence in the United States (examples include, but are not limited to: resident alien card number, visa number, "A" number, I-94 registration number, employment authorization number, or any other number on a document issued by the U.S. Government). *If the alien does not know of any such number, he shall so declare. Such a declaration shall be sufficient to satisfy this requirement.*

F. Upon receipt of a complete signed application and the payment of the application fee as set forth above, the City shall immediately issue an occupancy license. The City shall not deny an occupancy license to any occupant who submits a completed application and pays the application fee.

G. All information contained in occupancy license applications shall be maintained as confidential by the City, except that the information provided on an application may be disclosed to other government entities where authorized by law, pursuant to United States Code Title 8, Section 1373.

H. It shall be a violation of this section for a lessor to lease or rent a dwelling unit without obtaining and retaining a copy of the occupancy license of every known occupant of the dwelling unit.

I. It shall be a violation of this section for a lessor to lease a dwelling unit without including in the terms of the lease a provision stating that occupancy of the premises by a person, age 18 or older, who does not hold a valid occupancy license constitutes an event of default under the lease.

J. It shall be a violation of this section for a landlord or any agent of a landlord with authority to initiate proceedings to terminate a lease or tenancy to knowingly permit an occupant to occupy a dwelling unit without a valid occupancy license. It is a defense to a prosecution under this paragraph that the landlord or agent has commenced and diligently pursued such steps as may be required under the applicable law and lease provisions to terminate the lease or tenancy.

K. Any person who violates this section shall be subject to a fine of \$100 for each such violation, upon conviction in the County Court for Dodge County.

L. The lease or rental of a dwelling unit without obtaining and retaining a copy of the occupancy license of every known occupant, age 18 or older, shall be a separate violation for each occupant in a dwelling unit for which no license is obtained and retained, and for each day of such occupancy, beginning on the 46th day after the date of a revocation notice under Section 5.

## 4. ENFORCEMENT OF HARBORING AND OCCUPANCY PROVISIONS

Notwithstanding any other provision of this Ordinance, the Fremont Police Department (Hereinafter "Department") shall enforce the requirements of this Ordinance as follows.

A.   Promptly after issuance of an occupancy license to any occupant who has not declared himself or herself to be either a citizen or a national of the United States, the Department shall, pursuant to Title 8, United States Code, Section 1373(c), request the federal government to ascertain whether the occupant is an alien lawfully present in the United States. The Department shall submit to the federal government the identity and immigration status information contained on the application for the occupancy license, along with any other information requested by the federal government. The Department may enter into a memorandum of understanding to use the Systematic Alien Verification for Entitlements (SAVE) Program operated by the U.S. Department of Homeland Security, or utilize any other process or system designated by the federal government.

B.   If the federal government reports that the occupant is not lawfully present in the United States, the Department shall send a deficiency notice to the occupant, at the address of the dwelling unit shown on the application for occupancy license. The deficiency notice shall state that on or before the 60th day following the date of the notice, the occupant may seek to obtain a correction of the federal government's records and/or provide additional information establishing that the occupant is lawfully present in the United States. If the occupant provides such additional information, the Department shall promptly submit that information to the federal government. The occupant may also submit information directly to the federal government.

A-5

C.    If the federal government notifies the Department that it is unable to conclusively ascertain the immigration status of the occupant, or that the federal government's ascertainment of immigration status is tentative, the Department shall take no further action until final ascertainment of the immigration status of the occupant is received from the federal government. The Department shall not attempt to make an independent determination of any occupant's immigration status. If the federal government notifies the Department that more information is required before the federal government can issue a final ascertainment of the occupant's immigration status, or that the occupant may contest the federal government's ascertainment of status, the Department shall notify the occupant accordingly.

D.    No earlier than the 61st day after a deficiency notice has been sent to an occupant, the Department shall again make an inquiry to the federal government seeking to ascertain the immigration status of the occupant. If the federal government reports that the occupant is an alien who is not lawfully present in the United States, the Department shall send a revocation notice to both the occupant and the lessor. The revocation notice shall revoke the occupant's occupancy license effective 45 days after the date of the revocation notice.

E.    The terms of this section shall be applied uniformly, and enforcement procedures shall not differ based on a person's race, ethnicity, religion, or national origin.

F.    Judicial review shall also be available as follows:

   1.    Any landlord or occupant who has received a deficiency notice or a revocation notice may seek pre-deprivation or post-deprivation judicial review of the notice by filing suit against the City in a court of competent jurisdiction.

   2.    In the event that such a suit is filed prior to or within fifteen days after the date of the relevant revocation notice, if any, revocation shall be automatically stayed until final conclusion of judicial review.

   3.    The landlord or occupant may seek judicial review of the question of whether the Department complied with the provisions of this Ordinance or other relevant provisions of federal, state, or City law, or the question of whether the occupant is an alien not lawfully present in the United States, or of both such questions.

   4.    In a suit for judicial review in which the question of whether the occupant is an alien not lawfully present in the United States is to be decided, that question shall be determined under federal law. In answering the question, the court shall defer to any conclusive ascertainment of immigration status by the federal government.

   5.    The court may take judicial notice of any ascertainment of the immigration status of the occupant previously provided by the federal government. The court may, either sua sponte or at the request of a party, request the federal government to provide, in automated, documentary, or testimonial form, a new ascertainment of the immigration status of the occupant pursuant to United States Code Title 8, Section 1373(c). The most recent ascertainment of the immigration status of an individual by the federal government shall create a rebuttable presumption as to the individual's immigration status.

## 5. BUSINESS LICENSES, CONTRACTS OR GRANTS; THE E-VERIFY PROGRAM.

A.    It is the policy of the City to discourage business entities from knowingly recruiting, hiring for employment, or continuing to employ any person who is an unauthorized alien to perform work within the City.

B.   This Section shall not apply to the hiring of an independent contractor by a business entity, or to the intermittent hiring of casual labor for domestic tasks customarily performed by the residents of a dwelling. Such independent contractors or laborers are not employees within the meaning of this Section. This Section shall be interpreted to be fully consistent with United States Code Title 8, Section 1324a, and with all other applicable provisions of federal law.

C.   An authorized representative of any business entity that applies for any business license or permit in the City, or is awarded a contract for work to be performed in the City, or applies for any grant or loan from the City shall be required to execute an affidavit to the effect that the business entity does not knowingly employ any person who is an unauthorized alien. The business entity shall also provide documentation confirming that the business entity has registered in the E-Verify Program. Compliance with this section shall be a condition of any license or permit granted by the City, any contract awarded by the City and of any grant or loan given by the City.

D.   All agencies of the City shall register in the E-Verify Program and use the EVerify Program to verify the authorization of employment in the United States of each employee hired after such registration.

E.   Every business entity employing one or more employees and performing work within the City shall register in the E-Verify Program within 60 days after the effective date of this Ordinance, and shall use the E-Verify Program to verify the authorization of employment in the United States of each employee hired after such registration.

F.   Any business entity employing one or more employees that begins performing work within the City later than 60 days after the effective date of this Ordinance shall register in the E-Verify Program prior to commencing any work within the City, and shall use the E-Verify Program to verify the authorization of employment in the United States of each employee hired after such registration.

G.   In the enforcement of this Section, at no point shall any City official attempt to make an independent determination of the authorization of employment in the United States of any individual employed by a private business entity in the City.

H.   This Section shall be enforced by the City Attorney as follows:

1. If a business entity possesses a license, permit, contract, loan, or grant issued by the City and violates this Section, by failing to register in the EVerify Program and verify the authorization of employment in the United States of each employee hired after such registration, the business entity shall be tried at a public hearing before the City Council. Due process, including notice, the opportunity to present evidence and to be heard, and the right to appeal to the District Court of Dodge County, shall be accorded to all parties. If the City Council determines that a person or business entity has violated this Section, it may, according to the terms of such license, permit, contract, loan or grant, revoke the license, cancel the contract, recall the grant or accelerate the loan and institute an action to collect any sums due.

2. The City Attorney may bring a civil action against any business entity suspected of violating this section, by failing to register in the E-Verify Program and verify the authorization of employment in the United States of each employee hired after such registration, in a court of competent jurisdiction in Dodge County. The City Attorney may seek injunctive relief compelling the business entity to comply with this section.

I.   The following judicial review shall also be available:

A-7

1.    Any business entity that is subjected to enforcement under this Ordinance may seek pre-deprivation or post-deprivation judicial review of the enforcement of this Ordinance with respect to such business entity in any court of competent jurisdiction. While such judicial review is occurring, any actions by the City to revoke a license, permit, contract, loan, or grant issued by the City shall be stayed.

2.    Any business entity or employee subject to the terms of this Ordinance may seek judicial review of the question of whether the City has complied with the provisions of this Ordinance or other relevant provisions of federal, state, or City law in the County Court for Dodge County, or in any other court of competent jurisdiction.

## SECTION 2. CONSTRUCTION AND SEVERABILITY:

A.    The requirements and obligations of this section shall be implemented in a manner fully consistent with federal law regulating immigration and protecting the civil rights of all citizens, nationals, and aliens.

B.    If any part or provision of this Ordinance is in conflict or inconsistent with applicable provisions of federal or state statutes, or is otherwise held to be invalid or unenforceable by any court of competent jurisdiction, such part of provision shall be suspended and superseded by such applicable laws or regulations, and the remainder of this Chapter shall not be affected thereby.

## SECTION 3. REPEAL:

Any ordinance or parts of ordinances of the City of Fremont in conflict herewith are hereby repealed.

## SECTION 4. EFFECTIVE DATE:

This Ordinance shall be in full force and effect from and after passage and publication according to law.

PASSED JUNE 21, 2010

Donald B. Edwards, Mayor

ATTEST:

Kimberly Volk, MMC, City Clerk

A-8



EXHIBIT B

## ORDINANCE # 571-18

AN ORDINANCE OF THE CITY OF SCRIBNER, NEBRASKA, TO PROHIBIT THE HARBORING OF ILLEGAL ALIENS OR HIRING OF UNAUTHORIZED ALIENS, PROVIDING DEFINITIONS, MAKING PROVISION FOR OCCUPANCY LICENSES, PROVIDING JUDICIAL PROCESS, REPEALING CONFLICTING PROVISIONS, AND ESTABLISHING AN EFFECTIVE DATE FOR THIS ORDINANCE.

WHEREAS, Federal law requires that certain conditions be met before an alien may be authorized to be lawfully present in the United States. Those conditions are found principally at United States Code Title 8. Section 1101, et. seq., and,

WHEREAS, United States Code Title 8, Section 1324(a)(1)(A) prohibits the harboring of illegal aliens. The provision of housing to illegal aliens is a fundamental component of the federal immigration crime of harboring, and;

WHEREAS, United States Code Title 8, Section 1324a prohibits the knowing employment of unauthorized aliens; and United States Code Title 8, Section 1324a(h)(2) permits state and local governments to suspend the business licenses of those who employ unauthorized aliens, and;

WHEREAS, The presence of illegal aliens places a fiscal burden on the City, increasing the demand for, and cost of public benefits and services, and;

WHEREAS, Crimes committed by illegal aliens in the City harm the health, safety and welfare of U.S. citizens and aliens lawfully present in the United States, and;

WHEREAS, The employment of unauthorized aliens in the City displaces authorized United States workers and adversely affects their wages, and;

WHEREAS, In 1996 Congress amended the Immigration and Nationality Act to require the federal government to verify the immigration status of any alien upon the request of a state, county, or municipality, for any purpose authorized by law. United States Code Title 8, Section 1373(c). The federal government has established several systems to accomplish this obligation, including the Systematic Alien Verification for Entitlements (SAVE) Program and the Law Enforcement Support Center (LESC), and;

WHEREAS, This Ordinance is in harmony with the congressional objectives of prohibiting the knowing harboring of illegal aliens and prohibiting the knowing employment of unauthorized aliens, and;

WHEREAS, The Secretary of the U.S. Department of Homeland Security has specifically praised and encouraged those states and localities that require employers to participate in the E-Verify Program, and;

WHEREAS, The City of Scribner shall not construe this ordinance to prohibit the rendering of emergency medical care, emergency assistance, or legal assistance to any person.

BE IT THEREFORE ORDAINED BY THE MAYOR AND COUNCIL OF THE CITY OF SCRIBNER, NEBRASKA:

SECTION 1. That the following provisions for harboring and management of illegal aliens be and hereby are adopted:

§6-4213 Harboring or Hiring Illegal Aliens, Prohibited.

1. DEFINITIONS: For the purposes of this Ordinance, the following terms and phrases shall have the meanings ascribed to them herein, and shall be construed so as to be consistent with state and federal law, including federal immigration law:

A. *Illegal alien* means an alien who is not lawfully present in the United States, according to the terms of United States Code Title 8, Section 1101 et seq. The City shall not conclude that an individual is an illegal alien unless and until an authorized representative of the City has verified with the federal government, pursuant to United State Code Title 8, Section 1373(c), such individual's immigration status.

B. *Unlawfully present in the United States* means unlawfully present in the United States according to the terms of United States Code Title 8, Section 1101 et seq. The City shall not conclude that an alien is unlawfully present in the United States unless and until an authorized representative of the City has verified with the federal government, pursuant to United States Code Title 8, Section 1373 (c), such alien's immigration status.

C. *Dwelling unit* means a single residential unit with living facilities for one or more persons, including space for living, sleeping, eating, cooking, bathing and sanitation, whether furnished or unfurnished, that is let or rented for valuable consideration. There may be more than one rental unit on a premise. In a multifamily residence or apartment building, each residential unit or apartment constitutes a separate dwelling unit. The term dwelling unit does not include a dormitory room at a postsecondary educational institution, a room at a shelter for the homeless or the abused, or a hotel room.

D. *Lessor* means a person who leases or rents a dwelling unit as, or on behalf of a landlord.

E. *Occupant* means a person, age 18 or older, who resides at a dwelling unit. A temporary guest of an occupant is not an occupant for the purposes of this ordinance.

F. *Unauthorized alien* means an alien who does not have authorization of employment in the United States, as defined by United States Code Title 8, Section 1324a(h)(3). The City shall not conclude that an individual is an unauthorized alien unless and until an authorized representative of the City has verified with the federal government, pursuant to United States Code Title 8, Section 1373(c), such individual's lack of authorization of employment in the United States.

G. *Business entity* means any person, group of persons, partnership or corporation that engages in any activity. enterprise, profession or occupation for financial gain, benefit, or livelihood, and shall include all such activities, enterprises, professions, or occupations, whether preformed in one or more establishments by one or more corporate or other organizational units, including departments or establishments operated through leasing arrangements, whether for profit or not-for-profit. The term business entity shall include but not be limited to contractors, subcontractors, self-employed individuals, partnerships, and corporations, The term business entity shall include both business entities that are required to obtain a license or permit to conduct business in the City of Scribner, and businesses that are not required to obtain a license or permit to conduct business in the City of Scribner.

H. *Work* means any job, task, employment, labor, personal services, or any other activity for which compensation is provided, expected, or due, including but not limited to all activities conducted by business entities.

I. *E-Verify Program* means the electronic verification of employment authorization program of the Illegal Immigration Reform and Immigration Responsibility Act of 1996, P.L. 104-208, United States Code Title B. Section 1324a, and operated by the United States Department of Homeland Security (or a successor program established by the federal government).

J. *Systematic Alien Verification for Entitlements (SAVE) Program* means the electronic program created pursuant to the Immigration Reform and Control Act of 1986 (IRCA), P.L. 99-603, and the Personal Responsibility and Work

Opportunity Reconciliation Act of 1996 (PRWORA), P.L. 104193, which enables a federal, state, or local government entity to confirm with the United States Department of Homeland Security an alien's immigration status (or a successor program or method of confirmation of immigration status established by the federal government).

K.  *Business license* means any license, permit, occupation tax registration, business registration, or registration certification issued to a business entity by the City, including but not limited to all such licenses and permits described under the Scribner Municipal Code No.110-04.

L.  *City* means the City of Scribner, Nebraska.

## 2. HARBORING ILLEGAL ALIENS:

A. It is unlawful for any person or business entity that owns a dwelling unit in the City to harbor an illegal alien in the dwelling unit, knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States In violation of law, unless such harboring is otherwise expressly permitted by federal law.

1.  For the purpose of this section, to let, lease, or rent a dwelling unit to an illegal alien, knowing or in reckless disregard of the fact that an alien has come to, entered, *or* remains in the United States in violation of law, shall be deemed to constitute harboring. To suffer or permit the occupancy of the dwelling unit by an illegal alien, knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, shall also be deemed to constitute harboring.

2.  Condition of lease. An occupant may not enter into a contract for the rental or lease of a dwelling unit in the City unless the occupant is either a U.S. citizen or national, or an alien lawfully present in the United States according to the terms of United States Code Title 8, Section 1101 et seq. An occupant who is neither a U.S. citizen or national, nor an alien lawfully present in the United States, who enters into such a contract shall be deemed to have breached a condition of the lease. An occupant who is an alien who subsequent to the beginning of his lease becomes unlawfully present in the United States shall be deemed to have breached a condition of the lease.

3.  Prospective Application Only. This Ordinance shall apply only to contracts to let, lease, or rent dwelling units that are entered into and tenancies that begin after the date that the Ordinance becomes effective.

4.  The legal obligations imposed by this Section shall be enforced through the process described in Provisions 3 and 4 of this Ordinance, below.

## 3. ISSUANCE OF OCCUPANCY LICENSES:

A. Prior to occupying any leased or rented dwelling unit, each occupant, age 18 or older, must obtain an occupancy license.

B. It is the occupant's responsibility to submit an occupancy license application to the Scribner Police Department, pay a fee of $5 to the City, and obtain an occupancy license. If there are multiple occupants seeking to occupy a single rental unit, each occupant must obtain his or her own license. An applicant for an occupancy license may designate the owner or manager of the dwelling unit as his agent to collect the required information and submit the required application form(s), signed by the applicant, to the Scribner Police Department on the applicant's behalf. The City may establish a procedure whereby an applicant (or designated owner or agent) may submit the required application form(s), signed by the applicant, via facsimile or website portal.

C. The owner or manager of any dwelling unit must notify each prospective occupant of this requirement and shell not permit occupancy of a dwelling unit unless the occupant first obtains an occupancy license.

D. Each occupancy license is valid only for the occupant for as long as the occupant continues to occupy the dwelling unit for which such license was applied. Any relocation to a different dwelling unit requires a new occupancy license.

E. Applications for occupancy licenses shall be made upon forms furnished by the City for such purposes and shall require the following information:

(1) Full legal name of occupant;
(2) Mailing address of occupant;
(3) Address of dwelling unit for which occupant is applying, if different from mailing address;
(4) Name and business address of dwelling unit owner or manager;
(5) Date of lease commencement;
(6) Date of birth of occupant;
(7) Occupant's country or citizenship;
(8) Full legal name and date of birth of each minor dependent residing with occupant;
(9) *(a) In cases in which the applicant is a United States citizen or national,* a signed declaration that the applicant is a United States citizen or national on a form provided by the City, which notifies the applicant that knowingly making any false statement or claim that he or she is, or at any time has been, *a* citizen or national of the United States, with the intent to obtain a state benefit or service Is a crime under United States Code Title 18, Section 1015(e);

Or

*(b) in cases in which the applicant is not a United States citizen or national,* an identification number assigned by the federal government that the occupant believes establishes his lawful presence in the United States (examples include, but are not limited to: resident alien card number, visa number. "A" number, 1-94 registration number, employment authorization number, or any other number on a document issued by the U.S. Government). *If the alien does not know of any such number, he shall so declare. Such a declaration shall* be *sufficient to satisfy this requirement.*

F. Upon receipt of a complete signed application and the payment of the application fee as set forth above, the City shall immediately issue an occupancy license. The City shall not deny an occupancy license to any occupant who submits a completed application and pays the application fee.

G. All information contained in occupancy license applications shall be maintained as confidential by the City, except that the information provided on an application may be disclosed to other government entities where authorized by law, pursuant to United States Code Title 8, Section 1373.

H. It shall be a violation of this section for a lessor to lease or rent a dwelling unit without obtaining and retaining a copy of the occupancy license of every known occupant of the dwelling unit.

I. It shall be a violation of this section for a lessor to lease a dwelling unit without including in the terms of the lease a provision stating that occupancy of the premises by a person, age 18 or older, who does not hold a valid occupancy license constitutes an event of default under the lease.

J. It shall be a violation of this section for a landlord or any agent of a landlord with authority to initiate proceedings to terminate a lease or tenancy to knowingly permit an occupant to occupy a dwelling unit without a valid occupancy license. It is a defense to a prosecution under this paragraph that the landlord or agent has commenced and diligently pursued such steps as may be required under the applicable law and lease provisions to terminate the lease or tenancy,

K. Any person who violates this section shall be subject to a fine of $100 for each such violation, upon conviction in the County Court for Dodge County.

L. The lease or rental of a dwelling unit without obtaining and retaining a copy of the occupancy license of every known occupant, age 18 or older, shall be a separate violation for each occupant in a dwelling unit for which no license is obtained and retained, and for each day of such occupancy, beginning on the 46th day after the date of a revocation notice under Section 5.

## 4. ENFORCEMENT OF HARBORING AND OCCUPANCY PROVISIONS

Notwithstanding any other provision of this Ordinance, the Scribner Police Department (Hereinafter "Department") shall enforce the requirements of this Ordinance as follows.

A. Promptly after issuance of an occupancy license to any occupant who has not declared himself or herself to be either a citizen or a national of the United States, the Department shall, pursuant to Title 8, United States Code, Section 1373(c), request the federal government to ascertain whether the occupant is an alien lawfully present in the United States. The Department shall submit to the federal government the identity and immigration status information contained on the application for the occupancy license, along with any other information requested by the federal government. The Department may enter into a memorandum of understanding to use the Systematic Alien Verification for Entitlements (SAVE) Program operated by the U.S. Department of Homeland Security, or utilize any other process or system designated by the federal government.

B. If the federal government reports that the occupant is not lawfully present in the United States, the Department shall send a deficiency notice to the occupant, at the address of the dwelling unit shown on the application for occupancy license. The deficiency notice shall state that on or before the 60th day following the date of the notice, the occupant may seek to obtain a correction of the federal government's records and/or provide additional information establishing that the occupant is lawfully present in the United States. If the occupant provides such additional information, the Department shall promptly submit that information to the federal government. The occupant may also submit information directly to the federal government.

C. If the federal government notifies the Department that it is unable to conclusively ascertain the immigration status of the occupant, or that the federal government's ascertainment of immigration status is tentative, the Department shall take no further action until final ascertainment of the immigration status of the occupant is received from the federal government. The Department shall not attempt to make an independent determination of any occupant's immigration status. If the federal government notifies the Department that more information is required before the federal government can issue a final ascertainment of the occupant's immigration status, or that the occupant may contest the federal government's ascertainment of status, the Department shall notify the occupant accordingly.

D. No earlier than the 61st day after a deficiency notice has been sent to an occupant, the Department shall again make an inquiry to the federal government seeking to ascertain the immigration status of the occupant. If the federal government reports that the occupant is an alien who is not lawfully present in the United States, the Department shall send a revocation notice to both the occupant and the lessor. The revocation notice shall revoke the occupant's occupancy license effective 45 days after the date of the revocation notice.

E. The terms of this section shall be applied uniformly, and enforcement procedures shall not differ based on a person's race, ethnicity, religion, or national origin.

F. Judicial review shall also be available as follows:

1. Any landlord or occupant who has received a deficiency notice or a revocation notice may seek pre-deprivation or post-deprivation judicial review of the notice by filing suit against the City in a court of competent jurisdiction.
2. In the event that such a suit is filed prior to or within fifteen days after the date of the relevant revocation notice, if any, revocation shall be automatically stayed until final conclusion of judicial review.

3.   The landlord or occupant may seek judicial review of the question of whether the Department complied with the provisions of this Ordinance or other relevant provisions of federal, state, or City law, or the question of whether the occupant is an alien not lawfully present in the United States, or of both such questions.

4.   In a suit for judicial review in which the question of whether the occupant is an alien not lawfully present in the United States is to be decided, that question shall be determined under federal law. In answering the question, the court shall defer to any conclusive ascertainment of immigration status by the federal government.

5.   The court may take judicial notice of any ascertainment of the immigration status of the occupant previously provided by the federal government. The court may, either sue sponte or at the request of a party, request the federal government to provide, in automated, documentary, or testimonial form, a new ascertainment of the immigration status of the occupant pursuant to United States Code Title 6, Section 1373(c). The most recent ascertainment of the immigration status of an individual by the federal government shall create a rebuttable presumption as to the individual's immigration status.

5. BUSINESS LICENSES, CONTRACTS OR GRANTS; THE E-VERIFY PROGRAM.

A.   It is the policy of the City to discourage business entities from knowingly recruiting, hiring for employment, or continuing to employ any person who is an unauthorized alien to perform work within the City.

B.   This Section shall not apply to the hiring of an independent contractor by a business entity, or to the intermittent hiring of casual labor for domestic tasks customarily performed by the residents of a dwelling. Such independent contractors or laborers are not employees within the meaning of this Section. This Section shall be interpreted to be fully consistent with United States Code Title 8, Section 1324a, and with all other applicable provisions of federal law.

C.   An authorized representative of any business entity that applies for any business license or permit in the City, or is awarded a contract for work to be performed in the City, or applies for any grant or loan from the City shall be required to execute an affidavit to the effect that the business entity does not knowingly employ any person who is an unauthorized alien. The business entity shall also provide documentation confirming that the business entity has registered in the E-Verify Program. Compliance with this section shall be a condition of any license or permit granted by the City, any contract awarded by the City and of any grant or loan given by the City.

D.   All agencies of the City shall register In the E-Verity Program and use the E-Verify Program to verify the authorization of employment in the United States of each employee hired after such registration.

E.   Every business entity employing one or more employees and performing work within the City shall register in the E-Verify Program within 60 days after the effective date of this Ordinance, and shall use the E-Verify Program to verify the authorization of employment in the United States of each employee hired after such registration.

F.   Any business entity employing one or more employees that begins performing work within the City later than 60 days after the effective date of this Ordinance shall register in the E-Verify Program prior to commencing any work within the City, and shall use the E-Verify Program to verify the authorization of employment in the United States of each employee hired after such registration.

G.   In the enforcement of this Section, at no point shall any City official attempt to make an

independent determination of the authorization of employment in the United States of any individual employed by a private business entity in the City.

H.   This Section shall be enforced by the City Attorney as follows:

1. If a business entity possesses a license, permit, contract, loan, or grant issued by the City and violates this Section, by failing to register in the E-Verify Program and

B-6

verify the authorization of employment in the United States of each employee hired after such registration, the business entity shall be tried at a public hearing before the City Council. Due process, including notice, the opportunity to present evidence and to be heard, and the right to appeal to the District Court of Dodge County, shall be accorded to all parties. If the City Council determines that a person or business entity has violated this Section, it may, according to the terms of such license, permit, contract, loan or grant, revoke the license, cancel the contract, recall the grant or accelerate the loan and institute an action to collect any sums due.

2. The City Attorney may bring a civil action against any business entity suspected of violating this section, by failing to register in the E-Verify Program and verify the authorization of employment in the United States of each employee hired after such registration, in a court of competent jurisdiction in Dodge County. The City Attorney may seek injunctive relief compelling the business entity to comply with this section.

I.     The following judicial review shall also be available:

1. Any business entity that is subjected to enforcement under this Ordinance may seek pre-deprivation or post-deprivation judicial review of the enforcement of this Ordinance with respect to such business entity in any court of competent jurisdiction. While such judicial review is occurring, any actions by the City to revoke a license, permit, contract, loan, or grant issued by the City shall be stayed.

2. Any business entity or employee subject to the terms of this Ordinance may seek judicial review of the question of whether the City has complied with the provisions of this Ordinance or other relevant provisions of federal, state, or City law in the County Court for Dodge County, or in any other court of competent jurisdiction.

SECTION 2. CONSTRUCTION AND SEVERABILITY:

A.     The requirements and obligations of this section shall be implemented in a manner fully consistent with federal law regulating immigration and protecting the civil rights of all citizens, nationals, and aliens.

B.     If any part or provision of this Ordinance is in conflict or inconsistent with applicable provisions of federal or state statutes, or is otherwise held to be invalid or unenforceable by any court of competent jurisdiction, such part of provision shall be suspended and superseded by such applicable laws or regulations, and the remainder of this Chapter shall not be affected thereby.

SECTION 3. REPEAL:

Any ordinance or parts of ordinances of the City of Scribner in conflict herewith are hereby repealed.

SECTION 4. EFFECTIVE DATE:

This Ordinance shall be in full force and effect from and after passage and publication according to law.

PASSED December 17, 2018

COPY

Ken Thomas, Mayor

B-7

ATTEST:

_City Clerk_

### _CERTIFICATION_

  I, Elmer Armstrong, Clerk of the City of Scribner, Nebraska, hereby certify that the foregoing is a true and complete copy of Ordinance No.571-18 of said city, passed by the City Council this 17th. day of December 2018.



City Clerk

COPY



November 9, 2021

National Records Center
FOIA/PA Office
P.O. Box 648010
Lee's Summit, MO 64064-8010
Email: USCIS.FOIA@USCIS.DHS.GOV

***Re:  Request to U.S. Citizenship and Immigration Services Under
Freedom of Information Act***

VIA EMAIL

To Whom It May Concern:



**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION**

**Nebraska**

134 S. 13th St.
#1010
Lincoln, NE 68508
(402) 476-8091
aclunebraska.org

The American Civil Liberties Union of Nebraska ("ACLU") submits this Freedom of Information Act ("FOIA") request seeking disclosure of records pertaining to cooperation and communication among federal, state, and local agencies regarding the enforcement of ordinances in Fremont, Nebraska and Scribner, Nebraska meant "to prohibit the harboring of illegal aliens or hiring of unauthorized aliens."

## I.    BACKGROUND

In 2010, the City of Fremont, located in Dodge County, Nebraska, enacted an ordinance that requires renters in Fremont to obtain occupancy licenses, the applications for which require the renter attest to the renter's citizenship or immigration status ("Ordinance"). If the renter does not attest to being a U.S. citizen and cannot provide documentation reflecting their lawful presence, the Fremont Police Department will request the federal government "to ascertain whether the occupant is an alien lawfully present in the United States." The ordinance permits the Police Department to enter into a memorandum of understanding (MOU) with the U.S. Department of Homeland Security ("DHS") to access their Systematic Alien Verification for Entitlements (SAVE) Program. If the federal government reports that the renter does not have lawful status, the Police Department revokes the occupancy license.

In 2018, the city of Scribner, Nebraska passed an identical ordinance to the Fremont Ordinance ("Scribner Ordinance"). Scribner is located about twenty miles northwest of Fremont, also in Dodge County. A copy of Fremont's ordinance is attached hereto at Attachment 1. A copy of Scribner's ordinance is attached hereto as Attachment 2.

The City of Fremont is a registered agency with SAVE for benefit categories "commercial license," "occupational license," and "civilian license."[1] The City of Scribner does not appear as a registered agency with SAVE.

## II.        RECORDS REQUESTED

The ACLU seeks any records of communication received from or transmitted to an official or entity of the City of Fremont, including any agent or contractor of Fremont regarding the implementation and enforcement of the Ordinance. The request seeks any pertinent records from 2014 to present.

This request includes but is not limited to:

- E-mails and letters from Fremont officials, agents, or contractors or any individual on behalf of the city of Fremont seeking the verification of citizenship or immigration status of any individual and any response by DHS thereto;

- Any records of the Memorandum of Understanding ("MOU") between DHS-USCIS and Fremont, including any and all approved and executed MOU's permitting Fremont to access the SAVE Program and Fremont's application to register with the SAVE program.

The ACLU also seeks any records of communication received from or transmitted to an official or entity of the City of Scribner, including any agent or contractor of Scribner regarding the implementation and enforcement of the Scribner Ordinance. The request seeks any pertinent records from 2018 to present.

This request includes but is not limited to
- E-mails and letters from Fremont officials, agents, or contractors or any individual on behalf of the city of Fremont seeking the verification of citizenship or immigration status of any individual and any response by DHS thereto;

- Any records of the Memorandum of Understanding between DHS-USCIS and Scribner, including any and all approved and executed MOU's permitting Scribner to access the SAVE Program and Scribner's application to register with the SAVE program.

With respect to the form of production, pursuant to 5 U.S.C. § 552(a)(3)(B), the ACLU requests that responsive electronic records be provided

---

[1] SAVE Agency Search Tool, U.S. Citizenship and Immigration Services, https://www.uscis.gov/save/save-agency-search-tool?topic_id=fremont&agency_state_code[]=31&items_per_page=10.

electronically in their native file format, if possible. Alternatively, the ACLU requests that the records be provided electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession.

If this request is denied in whole or in part, the ACLU asks that you justify all deletions by reference to specific FOIA exemptions. The ACLU expects the release of all segregable portions of otherwise exempt material. The ACLU reserves the right to appeal a decision to withhold any information.

### III.   APPLICATION FOR WAIVER OR LIMITATION OF FEES AND EXPEDITED PROCESSING

The ACLU requests a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). The ACLU also requests a waiver of search fees on the grounds that the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

   *A.   The ACLU is a representative of the news media and the records are not sought for commercial use.*

The ACLU requests a waiver of search fees on the grounds that the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(III).

The ACLU is therefore a "representative of the news media" for the same reasons it is "primarily engaged in the dissemination of information." On account of these factors, fees associated with responding to FOIA requests are regularly waived for the ACLU as a "representative of the news media."

The ACLU requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).[2] There is a "compelling need" for this record, as defined in the statute, because the information requested is "urgent[tly]" needed by an organization primarily engaged in disseminating information "to inform the

---

[2] *See also* 6 C.F.R. § 5.5(e)(1).

C-3

public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

The ACLU is "primarily engaged in disseminating information" within the meaning of the FOIA. 5 U.S.C. § 552(a)(6)(E)(v)(II). *See also* 6 C.F.R. § 5.5(e)(1)(ii). Obtaining information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. *See ACLU v. U.S. Dep't of Justice,* 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").[3] We do this work alone and with our national partners and allies. The ACLU regularly creates and disseminates works in the form of presentations, reports, articles, interviews, testimony, social media, and blog posts to educate the public about the activities of the United States government.[4] The ACLU also regularly publishes "know your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and civil liberties.[5]

These records are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II). Specifically, as discussed above, the requested records seek to inform the public about enforcement of local ordinances in Nebraska that affect the housing access for Nebraska communities.

Pursuant to applicable statutes and regulations, the ACLU expects a determination regarding expedited processing within 10 days. See 5 U.S.C. § 552(a)(6)(E)(ii); 28 C.F.R. 16.5(e)(4); 32 C.F.R.§ 286.8(e)(1); 6 C.F.R. § 5.5(e)(4).

Please furnish the applicable records to the signed below.

---

[3] Courts have found that the ACLU as well as other organizations with similar missions that engage in information dissemination activities similar to the ACLU are "primarily engaged in disseminating information." *See, e.g.*, *Leadership Conference on Civil Rights v. Gonzales,* 404 F. Supp. 2d 246, 260 (D.D.C. 2005); ACLU, 321 F. Supp. 2d at 29 n.5; *Elec. Privacy Info. Ctr. v. U.S. Dep't of Defense*, 241 F. Supp. 2d 5, 11 (D.D.C 2003).

[4] *See generally* ACLU of Nebraska, *Immigrants' Rights,* https://www.aclunebraska.org/en/issues/immigrants-rights.

[5] *See generally* ACLU of Nebraska, *Immigrants' Rights,* https://www.aclunebraska.org/en/know-your-rights/ice-courthouse; ACLU of Nebraska, *Know Your Rights with Law Enforcement,* https://www.aclunebraska.org/en/know-your-rights/rights-with-law-enforcement.

Thank you for your prompt attention to this matter.


Sincerely,


Jane Seu
Immigration Legal Fellow
ACLU of Nebraska
134 S. 13th Street
Suite 1010
Lincoln, NE 68508
jseu@aclunebraska.org
402-476-8091 ext. 107

# Attachment 1

## ORDINANCE NO. 5165

**AN ORDINANCE OF THE CITY OF FREMONT, NEBRASKA, AMENDING THE FREMONT MUNICIPAL CODE, ORDINANCE NO. 3139 TO PROHIBIT THE HARBORING OF ILLEGAL ALIENS OR HIRING OF UNAUTHORIZED ALIENS, PROVIDING DEFINITIONS, MAKING PROVISION FOR OCCUPANCY LICENSES, PROVIDING JUDICIAL PROCESS, REPEALING CONFLICTING PROVISIONS, AND ESTABLISHING AN EFFECTIVE DATE FOR THIS ORDINANCE.**

- WHEREAS, Federal law requires that certain conditions be met before an alien may be authorized to be lawfully present in the United States. Those conditions are found principally at United States Code Title 8, Section 1101, et. seq., and;

- WHEREAS, United States Code Title 8, Section 1324(a)(1)(A) prohibits the harboring of illegal aliens. The provision of housing to illegal aliens is a fundamental component of the federal immigration crime of harboring, and;

- WHEREAS, United States Code Title 8, Section 1324a prohibits the knowing employment of unauthorized aliens; and United States Code Title 8, Section 1324a(h)(2) permits state and local governments to suspend the business licenses of those who employ unauthorized aliens, and;

- WHEREAS, The presence of illegal aliens places a fiscal burden on the City, increasing the demand for, and cost of, public benefits and services, and;

- WHEREAS, Crimes committed by illegal aliens in the City harm the health, safety and welfare of U.S. citizens and aliens lawfully present in the United States, and;

- WHEREAS, The employment of unauthorized aliens in the City displaces authorized United States workers and adversely affects their wages, and;

- WHEREAS, In 1996 Congress amended the Immigration and Nationality Act to require the federal government to verify the immigration status of any alien upon the request of a state, county, or municipality, for any purpose authorized by law. United States Code Title 8, Section 1373(c). The federal government has established several systems to accomplish this obligation, including the Systematic Alien Verification for Entitlements (SAVE) Program and the Law Enforcement Support Center (LESC), and;

- WHEREAS, This Ordinance is in harmony with the congressional objectives of prohibiting the knowing harboring of illegal aliens and prohibiting the knowing employment of unauthorized aliens, and;

- WHEREAS, The Secretary of the U.S. Department of Homeland Security has specifically praised and encouraged those states and localities that require employers to participate in the E-Verify Program, and;

- WHEREAS, The City of Fremont shall not construe this ordinance to prohibit the rendering of emergency medical care, emergency assistance, or legal assistance to any person.

**BE IT THEREFORE ORDAINED BY THE MAYOR AND COUNCIL OF THE CITY OF FREMONT, NEBRASKA:**

**SECTION 1.** That a new section §6-428 be added to the Fremont Municipal Code Ordinance No. 3139 to provide as follows:

**§6-428 Harboring or Hiring Illegal Aliens, Prohibited.**

**1. DEFINITIONS:** For the purposes of this Ordinance, the following terms and phrases shall have the meanings ascribed to them herein, and shall be construed so as to be consistent with state and federal law, including federal immigration law:

A.   ***Illegal alien*** means an alien who is not lawfully present in the United States, according to the terms of United States Code Title 8, Section 1101 et seq. The City shall not conclude that an individual is an illegal alien unless and until an authorized representative of the City has verified with the federal government, pursuant to United State Code Title 8, Section 1373(c), such individual's immigration status.

B.   ***Unlawfully present in the United States*** means unlawfully present in the United States according to the terms of United States Code Title 8, Section 1101 et seq. The City shall not conclude that an alien is unlawfully present in the United States unless and until an authorized representative of the City has verified with the federal government, pursuant to United States Code Title 8, Section 1373 (c), such alien's immigration status.

C.   ***Dwelling unit*** means a single residential unit with living facilities for one or more persons, including space for living, sleeping, eating, cooking, bathing and sanitation, whether furnished or unfurnished, that is let or rented for valuable consideration. There may be more than one rental unit on a premise. In a multifamily residence or apartment building, each residential unit or apartment constitutes a separate dwelling unit. The term dwelling unit does not include a dormitory room at a postsecondary educational institution, a room at a shelter for the homeless or the abused, or a hotel room.

D.   ***Lessor*** means a person who leases or rents a dwelling unit as, or on behalf of, a landlord.

E.   ***Occupant*** means a person, age 18 or older, who resides at a dwelling unit. A temporary guest of an occupant is not an occupant for the purposes of this ordinance.

F.   ***Unauthorized alien*** means an alien who does not have authorization of employment in the United States, as defined by United States Code Title 8, Section 1324a(h)(3). The City shall not conclude that an individual is an unauthorized alien unless and until an authorized representative of the City has verified with the federal government, pursuant to United States Code Title 8, Section 1373(c), such individual's lack of authorization of employment in the United States.

G.   ***Business entity*** means any person, group of persons, partnership or corporation that engages in any activity, enterprise, profession or occupation for financial gain, benefit, or livelihood, and shall include all such activities, enterprises, professions, or occupations, whether preformed in one or more establishments by one or more corporate or other organizational units, including departments or establishments operated through leasing arrangements, whether for profit or not-for-profit. The term business entity shall include but not be limited to contractors, subcontractors, self-employed individuals, partnerships, and corporations. The term business entity shall include both business entities that are required to obtain a license or permit to conduct business in the City of Fremont, and businesses that are not required to obtain a license or permit to conduct business in the City of Fremont.

H.   ***Work*** means any job, task, employment, labor, personal services, or any other activity for which compensation is provided, expected, or due, including but not limited to all activities conducted by business entities.

I.     *E-Verify Program* means the electronic verification of employment authorization program of the Illegal Immigration Reform and Immigration Responsibility Act of 1996, P.L. 104-208, United States Code Title 8, Section 1324a, and operated by the United States Department of Homeland Security (or a successor program established by the federal government).

J.     **Systematic Alien Verification for Entitlements (SAVE) Program** means the electronic program created pursuant to the Immigration Reform and Control Act of 1986 (IRCA), P.L. 99-603, and the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), P.L. 104193, which enables a federal, state, or local government entity to confirm with the United States Department of Homeland Security an alien's immigration status (or a successor program or method of confirmation of immigration status established by the federal government).

K.     *Business license* means any license, permit, occupation tax registration, business registration, or registration certification issued to a business entity by the City, including but not limited to all such licenses and permits described under the Fremont Municipal Code, Ordinance No. 3139.

L.     *City* means the City of Fremont, Nebraska.

## 2. HARBORING ILLEGAL ALIENS:

A. It is unlawful for any person or business entity that owns a dwelling unit in the City to harbor an illegal alien in the dwelling unit, knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, unless such harboring is otherwise expressly permitted by federal law.

1.     For the purpose of this section, to let, lease, or rent a dwelling unit to an illegal alien, knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, shall be deemed to constitute harboring. To suffer or permit the occupancy of the dwelling unit by an illegal alien, knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, shall also be deemed to constitute harboring.

2.     Condition of lease. An occupant may not enter into a contract for the rental or lease of a dwelling unit in the City unless the occupant is either a U.S. citizen or national, or an alien lawfully present in the United States according to the terms of United States Code Title 8, Section 1101 et seq. An occupant who is neither a U.S. citizen or national, nor an alien lawfully present in the United States, who enters into such a contract shall be deemed to have breached a condition of the lease. An occupant who is an alien who subsequent to the beginning of his lease becomes unlawfully present in the United States shall be deemed to have breached a condition of the lease.

3.     Prospective Application Only. This Ordinance shall apply only to contracts to let, lease, or rent dwelling units that are entered into and tenancies that begin after the date that the Ordinance becomes effective.

4.     The legal obligations imposed by this Section shall be enforced through the process described in Provisions 3 and 4 of this Ordinance, below.

**3. ISSUANCE OF OCCUPANCY LICENSES:**

A. Prior to occupying any leased or rented dwelling unit, each occupant, age 18 or older, must obtain an occupancy license.

B. It is the occupant's responsibility to submit an occupancy license application to the Fremont Police Department, pay a fee of $5 to the City, and obtain an occupancy license. If there are multiple occupants seeking to occupy a single rental unit, each occupant must obtain his or her own license. An applicant for an occupancy license may designate the owner or manager of the dwelling unit as his agent to collect the required information and submit the required application form(s), signed by the applicant, to the Fremont Police Department on the applicant's behalf. The City may establish a procedure whereby an applicant (or designated owner or agent) may submit the required application form(s), signed by the applicant, via facsimile or website portal.

C. The owner or manager of any dwelling unit must notify each prospective occupant of this requirement and shall not permit occupancy of a dwelling unit unless the occupant first obtains an occupancy license.

D. Each occupancy license is valid only for the occupant for as long as the occupant continues to occupy the dwelling unit for which such license was applied. Any relocation to a different dwelling unit requires a new occupancy license.

E. Applications for occupancy licenses shall be made upon forms furnished by the City for such purposes and shall require the following information:

    (1)   Full legal name of occupant;
    (2)   Mailing address of occupant;
    (3)   Address of dwelling unit for which occupant is applying, if different from mailing address;
    (4)   Name and business address of dwelling unit owner or manager;
    (5)   Date of lease commencement;
    (6)   Date of birth of occupant;
    (7)   Occupant's country or citizenship;
    (8)   Full legal name and date of birth of each minor dependent residing with occupant;
    (9)   (a) *in cases in which the applicant is a United States citizen or national, a* signed declaration that the applicant is a United States citizen or national on a form provided by the City, which notifies the applicant that knowingly making any false statement or claim that he or she is, or at any time has been, a citizen or national of the United States, with the intent to obtain a state benefit or service is a crime under United States Code Title 18, Section 1015(e);

or

        (b) *in cases in which the applicant is not a United States citizen or national,* an identification number assigned by the federal government that the occupant believes establishes his lawful presence in the United States (examples include, but are not limited to: resident alien card number, visa number, "A" number, I-94 registration number, employment authorization number, or any other number on a document issued by the U.S. Government). *If the alien does not know of any such number, he shall so declare. Such a declaration shall be sufficient to satisfy this requirement.*

F. Upon receipt of a complete signed application and the payment of the application fee as set forth above, the City shall immediately issue an occupancy license. The City shall not deny an occupancy license to any occupant who submits a completed application and pays the application fee.

G. All information contained in occupancy license applications shall be maintained as confidential by the City, except that the information provided on an application may be disclosed to other government entities where authorized by law, pursuant to United States Code Title 8, Section 1373.

H. It shall be a violation of this section for a lessor to lease or rent a dwelling unit without obtaining and retaining a copy of the occupancy license of every known occupant of the dwelling unit.

I. It shall be a violation of this section for a lessor to lease a dwelling unit without including in the terms of the lease a provision stating that occupancy of the premises by a person, age 18 or older, who does not hold a valid occupancy license constitutes an event of default under the lease.

J. It shall be a violation of this section for a landlord or any agent of a landlord with authority to initiate proceedings to terminate a lease or tenancy to knowingly permit an occupant to occupy a dwelling unit without a valid occupancy license. It is a defense to a prosecution under this paragraph that the landlord or agent has commenced and diligently pursued such steps as may be required under the applicable law and lease provisions to terminate the lease or tenancy.

K. Any person who violates this section shall be subject to a fine of $100 for each such violation, upon conviction in the County Court for Dodge County.

L. The lease or rental of a dwelling unit without obtaining and retaining a copy of the occupancy license of every known occupant, age 18 or older, shall be a separate violation for each occupant in a dwelling unit for which no license is obtained and retained, and for each day of such occupancy, beginning on the 46th day after the date of a revocation notice under Section 5.

## 4. ENFORCEMENT OF HARBORING AND OCCUPANCY PROVISIONS

Notwithstanding any other provision of this Ordinance, the Fremont Police Department (Hereinafter "Department") shall enforce the requirements of this Ordinance as follows.

A. Promptly after issuance of an occupancy license to any occupant who has not declared himself or herself to be either a citizen or a national of the United States, the Department shall, pursuant to Title 8, United States Code, Section 1373(c), request the federal government to ascertain whether the occupant is an alien lawfully present in the United States. The Department shall submit to the federal government the identity and immigration status information contained on the application for the occupancy license, along with any other information requested by the federal government. The Department may enter into a memorandum of understanding to use the Systematic Alien Verification for Entitlements (SAVE) Program operated by the U.S. Department of Homeland Security, or utilize any other process or system designated by the federal government.

B. If the federal government reports that the occupant is not lawfully present in the United States, the Department shall send a deficiency notice to the occupant, at the address of the dwelling unit shown on the application for occupancy license. The deficiency notice shall state that on or before the 60th day following the date of the notice, the occupant may seek to obtain a correction of the federal government's records and/or provide additional information establishing that the occupant is lawfully present in the United States. If the occupant provides such additional information, the Department shall promptly submit that information to the federal government. The occupant may also submit information directly to the federal government.

C.  If the federal government notifies the Department that it is unable to conclusively ascertain the immigration status of the occupant, or that the federal government's ascertainment of immigration status is tentative, the Department shall take no further action until final ascertainment of the immigration status of the occupant is received from the federal government. The Department shall not attempt to make an independent determination of any occupant's immigration status. If the federal government notifies the Department that more information is required before the federal government can issue a final ascertainment of the occupant's immigration status, or that the occupant may contest the federal government's ascertainment of status, the Department shall notify the occupant accordingly.

D.  No earlier than the 61st day after a deficiency notice has been sent to an occupant, the Department shall again make an inquiry to the federal government seeking to ascertain the immigration status of the occupant. If the federal government reports that the occupant is an alien who is not lawfully present in the United States, the Department shall send a revocation notice to both the occupant and the lessor. The revocation notice shall revoke the occupant's occupancy license effective 45 days after the date of the revocation notice.

E.  The terms of this section shall be applied uniformly, and enforcement procedures shall not differ based on a person's race, ethnicity, religion, or national origin.

F.  Judicial review shall also be available as follows:

1.  Any landlord or occupant who has received a deficiency notice or a revocation notice may seek pre-deprivation or post-deprivation judicial review of the notice by filing suit against the City in a court of competent jurisdiction.

2.  In the event that such a suit is filed prior to or within fifteen days after the date of the relevant revocation notice, if any, revocation shall be automatically stayed until final conclusion of judicial review.

3.  The landlord or occupant may seek judicial review of the question of whether the Department complied with the provisions of this Ordinance or other relevant provisions of federal, state, or City law, or the question of whether the occupant is an alien not lawfully present in the United States, or of both such questions.

4.  In a suit for judicial review in which the question of whether the occupant is an alien not lawfully present in the United States is to be decided, that question shall be determined under federal law. In answering the question, the court shall defer to any conclusive ascertainment of immigration status by the federal government.

5.  The court may take judicial notice of any ascertainment of the immigration status of the occupant previously provided by the federal government. The court may, either sua sponte or at the request of a party, request the federal government to provide, in automated, documentary, or testimonial form, a new ascertainment of the immigration status of the occupant pursuant to United States Code Title 8, Section 1373(c). The most recent ascertainment of the immigration status of an individual by the federal government shall create a rebuttable presumption as to the individual's immigration status.

## 5. BUSINESS LICENSES, CONTRACTS OR GRANTS; THE E-VERIFY PROGRAM.

A.  It is the policy of the City to discourage business entities from knowingly recruiting, hiring for employment, or continuing to employ any person who is an unauthorized alien to perform work within the City.

C-12

B.    This Section shall not apply to the hiring of an independent contractor by a business entity, or to the intermittent hiring of casual labor for domestic tasks customarily performed by the residents of a dwelling. Such independent contractors or laborers are not employees within the meaning of this Section. This Section shall be interpreted to be fully consistent with United States Code Title 8, Section 1324a, and with all other applicable provisions of federal law.

C.    An authorized representative of any business entity that applies for any business license or permit in the City, or is awarded a contract for work to be performed in the City, or applies for any grant or loan from the City shall be required to execute an affidavit to the effect that the business entity does not knowingly employ any person who is an unauthorized alien. The business entity shall also provide documentation confirming that the business entity has registered in the E-Verify Program. Compliance with this section shall be a condition of any license or permit granted by the City, any contract awarded by the City and of any grant or loan given by the City.

D.    All agencies of the City shall register in the E-Verify Program and use the EVerify Program to verify the authorization of employment in the United States of each employee hired after such registration.

E.    Every business entity employing one or more employees and performing work within the City shall register in the E-Verify Program within 60 days after the effective date of this Ordinance, and shall use the E-Verify Program to verify the authorization of employment in the United States of each employee hired after such registration.

F.    Any business entity employing one or more employees that begins performing work within the City later than 60 days after the effective date of this Ordinance shall register in the E-Verify Program prior to commencing any work within the City, and shall use the E-Verify Program to verify the authorization of employment in the United States of each employee hired after such registration.

G.    In the enforcement of this Section, at no point shall any City official attempt to make an independent determination of the authorization of employment in the United States of any individual employed by a private business entity in the City.

H.    This Section shall be enforced by the City Attorney as follows:

    1. If a business entity possesses a license, permit, contract, loan, or grant issued by the City and violates this Section, by failing to register in the EVerify Program and verify the authorization of employment in the United States of each employee hired after such registration, the business entity shall be tried at a public hearing before the City Council. Due process, including notice, the opportunity to present evidence and to be heard, and the right to appeal to the District Court of Dodge County, shall be accorded to all parties. If the City Council determines that a person or business entity has violated this Section, it may, according to the terms of such license, permit, contract, loan or grant, revoke the license, cancel the contract, recall the grant or accelerate the loan and institute an action to collect any sums due.

    2. The City Attorney may bring a civil action against any business entity suspected of violating this section, by failing to register in the E-Verify Program and verify the authorization of employment in the United States of each employee hired after such registration, in a court of competent jurisdiction in Dodge County. The City Attorney may seek injunctive relief compelling the business entity to comply with this section.

I.    The following judicial review shall also be available:

1.  Any business entity that is subjected to enforcement under this Ordinance may seek pre-deprivation or post-deprivation judicial review of the enforcement of this Ordinance with respect to such business entity in any court of competent jurisdiction. While such judicial review is occurring, any actions by the City to revoke a license, permit, contract, loan, or grant issued by the City shall be stayed.

2.  Any business entity or employee subject to the terms of this Ordinance may seek judicial review of the question of whether the City has complied with the provisions of this Ordinance or other relevant provisions of federal, state, or City law in the County Court for Dodge County, or in any other court of competent jurisdiction.

## SECTION 2. CONSTRUCTION AND SEVERABILITY:

A.  The requirements and obligations of this section shall be implemented in a manner fully consistent with federal law regulating immigration and protecting the civil rights of all citizens, nationals, and aliens.

B.  If any part or provision of this Ordinance is in conflict or inconsistent with applicable provisions of federal or state statutes, or is otherwise held to be invalid or unenforceable by any court of competent jurisdiction, such part of provision shall be suspended and superseded by such applicable laws or regulations, and the remainder of this Chapter shall not be affected thereby.

## SECTION 3. REPEAL:

Any ordinance or parts of ordinances of the City of Fremont in conflict herewith are hereby repealed.

## SECTION 4. EFFECTIVE DATE:

This Ordinance shall be in full force and effect from and after passage and publication according to law.

PASSED JUNE 21, 2010

Donald B. Edwards, Mayor

ATTEST:

Kimberly Volk, MMC, City Clerk

C-14

# Attachment 2

**ORDINANCE # 571-18**



AN ORDINANCE OF THE CITY OF SCRIBNER, NEBRASKA, TO PROHIBIT THE HARBORING OF ILLEGAL ALIENS OR HIRING OF UNAUTHORIZED ALIENS, PROVIDING DEFINITIONS, MAKING PROVISION FOR OCCUPANCY LICENSES, PROVIDING JUDICIAL PROCESS, REPEALING CONFLICTING PROVISIONS, AND ESTABLISHING AN EFFECTIVE DATE FOR THIS ORDINANCE.

WHEREAS, Federal law requires that certain conditions be met before an alien may be authorized to be lawfully present in the United States. Those conditions are found principally at United States Code Title 8. Section 1101, et. seq., and,

WHEREAS, United States Code Title 8, Section 1324(a)(1)(A) prohibits the harboring of illegal aliens. The provision of housing to illegal aliens is a fundamental component of the federal immigration crime of harboring, and;

WHEREAS, United States Code Title 8, Section 1324a prohibits the knowing employment of unauthorized aliens; and United States Code Title 8, Section 1324a(h)(2) permits state and local governments to suspend the business licenses of those who employ unauthorized aliens, and;

WHEREAS, The presence of illegal aliens places a fiscal burden on the City, increasing the demand for, and cost of public benefits and services, and;

WHEREAS, Crimes committed by illegal aliens in the City harm the health, safety and welfare of U.S. citizens and aliens lawfully present in the United States, and;

WHEREAS, The employment of unauthorized aliens in the City displaces authorized United States workers and adversely affects their wages, and;

WHEREAS, In 1996 Congress amended the Immigration and Nationality Act to require the federal government to verify the immigration status of any alien upon the request of a state, county, or municipality, for any purpose authorized by law. United States Code Title 8, Section 1373(c). The federal government has established several systems to accomplish this obligation, including the Systematic Alien Verification for Entitlements (SAVE) Program and the Law Enforcement Support Center (LESC), and;

WHEREAS, This Ordinance is in harmony with the congressional objectives of prohibiting the knowing harboring of illegal aliens and prohibiting the knowing employment of unauthorized aliens, and;

WHEREAS, The Secretary of the U.S. Department of Homeland Security has specifically praised and encouraged those states and localities that require employers to participate in the E-Verify Program, and;

WHEREAS, The City of Scribner shall not construe this ordinance to prohibit the rendering of emergency medical care, emergency assistance, or legal assistance to any person.

BE IT THEREFORE ORDAINED BY THE MAYOR AND COUNCIL OF THE CITY OF SCRIBNER, NEBRASKA:

SECTION 1. That the following provisions for harboring and management of illegal aliens be and hereby are adopted:

§6-4213 Harboring or Hiring Illegal Aliens, Prohibited.

1. DEFINITIONS: For the purposes of this Ordinance, the following terms and phrases shall have the meanings ascribed to them herein, and shall be construed so as to be consistent with state and federal law, including federal immigration law:

A. *Illegal alien* means an alien who is not lawfully present in the United States, according to the terms of United States Code Title 8, Section 1101 et seq. The City shall not conclude that an individual is an illegal alien unless and until an authorized representative of the City has verified with the federal government, pursuant to United State Code Title 8, Section 1373(c), such individual's immigration status.

B. *Unlawfully present in the United States* means unlawfully present in the United States according to the terms of United States Code Title 8, Section 1101 et seq. The City shall not conclude that an alien is unlawfully present in the United States unless and until an authorized representative of the City has verified with the federal government, pursuant to United States Code Title 8, Section 1373 (c), such alien's immigration status.

C. *Dwelling unit* means a single residential unit with living facilities for one or more persons, including space for living, sleeping, eating, cooking, bathing and sanitation, whether furnished or unfurnished, that is let or rented for valuable consideration. There may be more than one rental unit on a premise. In a multifamily residence or apartment building, each residential unit or apartment constitutes a separate dwelling unit. The term dwelling unit does not include a dormitory room at a postsecondary educational institution, a room at a shelter for the homeless or the abused, or a hotel room.

D. *Lessor* means a person who leases or rents a dwelling unit as, or on behalf of a landlord.

E. *Occupant* means a person, age 18 or older, who resides at a dwelling unit. A temporary guest of an occupant is not an occupant for the purposes of this ordinance.

F. *Unauthorized alien* means an alien who does not have authorization of employment in the United States, as defined by United States Code Title 8, Section 1324a(h)(3). The City shall not conclude that an individual is an unauthorized alien unless and until an authorized representative of the City has verified with the federal government, pursuant to United States Code Title 8, Section 1373(c), such individual's lack of authorization of employment in the United States.

G. *Business entity* means any person, group of persons, partnership or corporation that engages in any activity. enterprise, profession or occupation for financial gain, benefit, or livelihood, and shall include all such activities, enterprises, professions, or occupations, whether preformed in one or more establishments by one or more corporate or other organizational units, including departments or establishments operated through leasing arrangements, whether for profit or not-for-profit. The term business entity shall include but not be limited to contractors, subcontractors, self-employed individuals, partnerships, and corporations, The term business entity shall include both business entities that are required to obtain a license or permit to conduct business in the City of Scribner, and businesses that are not required to obtain a license or permit to conduct business in the City of Scribner.

H. *Work* means any job, task, employment, labor, personal services, or any other activity for which compensation is provided, expected, or due, including but not limited to all activities conducted by business entities.

I. *E-Verify Program* means the electronic verification of employment authorization program of the Illegal Immigration Reform and Immigration Responsibility Act of 1996, P.L. 104-208, United States Code Title B. Section 1324a, and operated by the United States Department of Homeland Security (or a successor program established by the federal government).

J. *Systematic Alien Verification for Entitlements (SAVE) Program* means the electronic program created pursuant to the Immigration Reform and Control Act of 1986 (IRCA), P.L. 99-603, and the Personal Responsibility and Work

C-17

Opportunity Reconciliation Act of 1996 (PRWORA), P.L. 104193, which enables a federal, state, or local government entity to confirm with the United States Department of Homeland Security an alien's immigration status (or a successor program or method of confirmation of immigration status established by the federal government).

K. *Business license* means any license, permit, occupation tax registration, business registration, or registration certification issued to a business entity by the City, including but not limited to all such licenses and permits described under the Scribner Municipal Code No.110-04.

L. *City* means the City of Scribner, Nebraska.

2. HARBORING ILLEGAL ALIENS:

A. It is unlawful for any person or business entity that owns a dwelling unit in the City to harbor an illegal alien in the dwelling unit, knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States In violation of law, unless such harboring is otherwise expressly permitted by federal law.

1. For the purpose of this section, to let, lease, or rent a dwelling unit to an illegal alien, knowing or in reckless disregard of the fact that an alien has come to, entered, *or* remains in the United States in violation of law, shall be deemed to constitute harboring. To suffer or permit the occupancy of the dwelling unit by an illegal alien, knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, shall also be deemed to constitute harboring.

2. Condition of lease. An occupant may not enter into a contract for the rental or lease of a dwelling unit in the City unless the occupant is either a U.S. citizen or national, or an alien lawfully present in the United States according to the terms of United States Code Title 8, Section 1101 et seq. An occupant who is neither a U.S. citizen or national, nor an alien lawfully present in the United States, who enters into such a contract shall be deemed to have breached a condition of the lease. An occupant who is an alien who subsequent to the beginning of his lease becomes unlawfully present in the United States shall be deemed to have breached a condition of the lease.

3. Prospective Application Only. This Ordinance shall apply only to contracts to let, lease, or rent dwelling units that are entered into and tenancies that begin after the date that the Ordinance becomes effective.

4. The legal obligations imposed by this Section shall be enforced through the process described in Provisions 3 and 4 of this Ordinance, below.

3. ISSUANCE OF OCCUPANCY LICENSES:

A. Prior to occupying any leased or rented dwelling unit, each occupant, age 18 or older, must obtain an occupancy license.

B. It is the occupant's responsibility to submit an occupancy license application to the Scribner Police Department, pay a fee of $5 to the City, and obtain an occupancy license. If there are multiple occupants seeking to occupy a single rental unit, each occupant must obtain his or her own license. An applicant for an occupancy license may designate the owner or manager of the dwelling unit as his agent to collect the required information and submit the required application form(s), signed by the applicant, to the Scribner Police Department on the applicant's behalf. The City may establish a procedure whereby an applicant (or designated owner or agent) may submit the required application form(s), signed by the applicant, via facsimile or website portal.

C. The owner or manager of any dwelling unit must notify each prospective occupant of this requirement and shell not permit occupancy of a dwelling unit unless the occupant first obtains an occupancy license.

D. Each occupancy license is valid only for the occupant for as long as the occupant continues to occupy the dwelling unit for which such license was applied. Any relocation to a different dwelling unit requires a new occupancy license.

E. Applications for occupancy licenses shall be made upon forms furnished by the City for such purposes and shall require the following information:

(1) Full legal name of occupant;
(2) Mailing address of occupant;
(3) Address of dwelling unit for which occupant is applying, if different from mailing address;
(4) Name and business address of dwelling unit owner or manager;
(5) Date of lease commencement;
(6) Date of birth of occupant;
(7) Occupant's country or citizenship;
(8) Full legal name and date of birth of each minor dependent residing with occupant;
(9) *(a) In cases in which the applicant is a United States citizen or national,* a signed declaration that the applicant is a United States citizen or national on a form provided by the City, which notifies the applicant that knowingly making any false statement or claim that he or she is, or at any time has been, *a* citizen or national of the United States, with the intent to obtain a state benefit or service Is a crime under United States Code Title 18, Section 1015(e);

Or

*(b) in cases in which the applicant is not* a *United States citizen or national,* an identification number assigned by the federal government that the occupant believes establishes his lawful presence in the United States (examples include, but are not limited to: resident alien card number, visa number. "A" number, 1-94 registration number, employment authorization number, or any other number on a document issued by the U.S. Government). *If the alien does not know of any such number, he shall so declare. Such a declaration shall* be *sufficient to satisfy this requirement.*

F. Upon receipt of a complete signed application and the payment of the application fee as set forth above, the City shall immediately issue an occupancy license. The City shall not deny an occupancy license to any occupant who submits a completed application and pays the application fee.

G. All information contained in occupancy license applications shall be maintained as confidential by the City, except that the information provided on an application may be disclosed to other government entities where authorized by law, pursuant to United States Code Title 8, Section 1373.

H. It shall be a violation of this section for a lessor to lease or rent a dwelling unit without obtaining and retaining a copy of the occupancy license of every known occupant of the dwelling unit.

I. It shall be a violation of this section for a lessor to lease a dwelling unit without including in the terms of the lease a provision stating that occupancy of the premises by a person, age 18 or older, who does not hold a valid occupancy license constitutes an event of default under the lease.

J. It shall be a violation of this section for a landlord or any agent of a landlord with authority to initiate proceedings to terminate a lease or tenancy to knowingly permit an occupant to occupy a dwelling unit without a valid occupancy license. It is a defense to a prosecution under this paragraph that the landlord or agent has commenced and diligently pursued such steps as may be required under the applicable law and lease provisions to terminate the lease or tenancy,

K. Any person who violates this section shall be subject to a fine of $100 for each such violation, upon conviction in the County Court for Dodge County.

C-19

L. The lease or rental of a dwelling unit without obtaining and retaining a copy of the occupancy license of every known occupant, age 18 or older, shall be a separate violation for each occupant in a dwelling unit for which no license is obtained and retained, and for each day of such occupancy, beginning on the 46th day after the date of a revocation notice under Section 5.

4. ENFORCEMENT OF HARBORING AND OCCUPANCY PROVISIONS

Notwithstanding any other provision of this Ordinance, the Scribner Police Department (Hereinafter "Department") shall enforce the requirements of this Ordinance as follows.

A. Promptly after issuance of an occupancy license to any occupant who has not declared himself or herself to be either a citizen or a national of the United States, the Department shall, pursuant to Title 8, United States Code, Section 1373(c), request the federal government to ascertain whether the occupant is an alien lawfully present in the United States. The Department shall submit to the federal government the identity and immigration status information contained on the application for the occupancy license, along with any other information requested by the federal government. The Department may enter into a memorandum of understanding to use the Systematic Alien Verification for Entitlements (SAVE) Program operated by the U.S. Department of Homeland Security, or utilize any other process or system designated by the federal government.

B. If the federal government reports that the occupant is not lawfully present in the United States, the Department shall send a deficiency notice to the occupant, at the address of the dwelling unit shown on the application for occupancy license. The deficiency notice shall state that on or before the 60th day following the date of the notice, the occupant may seek to obtain a correction of the federal government's records and/or provide additional information establishing that the occupant is lawfully present in the United States. If the occupant provides such additional information, the Department shall promptly submit that information to the federal government. The occupant may also submit information directly to the federal government.

C. If the federal government notifies the Department that it is unable to conclusively ascertain the immigration status of the occupant, or that the federal government's ascertainment of immigration status is tentative, the Department shall take no further action until final ascertainment of the immigration status of the occupant is received from the federal government. The Department shall not attempt to make an independent determination of any occupant's immigration status. If the federal government notifies the Department that more information is required before the federal government can issue a final ascertainment of the occupant's immigration status, or that the occupant may contest the federal government's ascertainment of status, the Department shall notify the occupant accordingly.

D. No earlier than the 61st day after a deficiency notice has been sent to an occupant, the Department shall again make an inquiry to the federal government seeking to ascertain the immigration status of the occupant. If the federal government reports that the occupant is an alien who is not lawfully present in the United States, the Department shall send a revocation notice to both the occupant and the lessor. The revocation notice shall revoke the occupant's occupancy license effective 45 days after the date of the revocation notice.

E. The terms of this section shall be applied uniformly, and enforcement procedures shall not differ based on a person's race, ethnicity, religion, or national origin.

F. Judicial review shall also be available as follows:

1. Any landlord or occupant who has received a deficiency notice or a revocation notice may seek pre-deprivation or post-deprivation judicial review of the notice by filing suit against the City in a court of competent jurisdiction.

2. In the event that such a suit is filed prior to or within fifteen days after the date of the relevant revocation notice, if any, revocation shall be automatically stayed until final conclusion of judicial review.

3.  The landlord or occupant may seek judicial review of the question of whether the Department complied with the provisions of this Ordinance or other relevant provisions of federal, state, or City law, or the question of whether the occupant is an alien not lawfully present in the United States, or of both such questions.

4.  In a suit for judicial review in which the question of whether the occupant is an alien not lawfully present in the United States is to be decided, that question shall be determined under federal law. In answering the question, the court shall defer to any conclusive ascertainment of immigration status by the federal government.

5.  The court may take judicial notice of any ascertainment of the immigration status of the occupant previously provided by the federal government. The court may, either sue sponte or at the request of a party, request the federal government to provide, in automated, documentary, or testimonial form, a new ascertainment of the immigration status of the occupant pursuant to United States Code Title 6, Section 1373(c). The most recent ascertainment of the immigration status of an individual by the federal government shall create a rebuttable presumption as to the individual's immigration status.

5. BUSINESS LICENSES, CONTRACTS OR GRANTS; THE E-VERIFY PROGRAM.

A.  It is the policy of the City to discourage business entities from knowingly recruiting, hiring for employment, or continuing to employ any person who is an unauthorized alien to perform work within the City.

B.  This Section shall not apply to the hiring of an independent contractor by a business entity, or to the intermittent hiring of casual labor for domestic tasks customarily performed by the residents of a dwelling. Such independent contractors or laborers are not employees within the meaning of this Section. This Section shall be interpreted to be fully consistent with United States Code Title 8, Section 1324a, and with all other applicable provisions of federal law.

C.  An authorized representative of any business entity that applies for any business license or permit in the City, or is awarded a contract for work to be performed in the City, or applies for any grant or loan from the City shall be required to execute an affidavit to the effect that the business entity does not knowingly employ any person who is an unauthorized alien. The business entity shall also provide documentation confirming that the business entity has registered in the E-Verify Program. Compliance with this section shall be a condition of any license or permit granted by the City, any contract awarded by the City and of any grant or loan given by the City.

D.  All agencies of the City shall register In the E-Verity Program and use the E-Verify Program to verify the authorization of employment in the United States of each employee hired after such registration.

E.  Every business entity employing one or more employees and performing work within the City shall register in the E-Verify Program within 60 days after the effective date of this Ordinance, and shall use the E-Verify Program to verify the authorization of employment in the United States of each employee hired after such registration.

F.  Any business entity employing one or more employees that begins performing work within the City later than 60 days after the effective date of this Ordinance shall register in the E-Verify Program prior to commencing any work within the City, and shall use the E-Verify Program to verify the authorization of employment in the United States of each employee hired after such registration.

G.  In the enforcement of this Section, at no point shall any City official attempt to make an

independent determination of the authorization of employment in the United States of any individual employed by a private business entity in the City.

H.  This Section shall be enforced by the City Attorney as follows:

1.  If a business entity possesses a license, permit, contract, loan, or grant issued by the City and violates this Section, by failing to register in the E-Verify Program and

C-21

verify the authorization of employment in the United States of each employee hired after such registration, the business entity shall be tried at a public hearing before the City Council. Due process, including notice, the opportunity to present evidence and to be heard, and the right to appeal to the District Court of Dodge County, shall be accorded to all parties. If the City Council determines that a person or business entity has violated this Section, it may, according to the terms of such license, permit, contract, loan or grant, revoke the license, cancel the contract, recall the grant or accelerate the loan and institute an action to collect any sums due.

2. The City Attorney may bring a civil action against any business entity suspected of violating this section, by failing to register in the E-Verify Program and verify the authorization of employment in the United States of each employee hired after such registration, in a court of competent jurisdiction in Dodge County. The City Attorney may seek injunctive relief compelling the business entity to comply with this section.

I.      The following judicial review shall also be available:

1. Any business entity that is subjected to enforcement under this Ordinance may seek pre-deprivation or post-deprivation judicial review of the enforcement of this Ordinance with respect to such business entity in any court of competent jurisdiction. While such judicial review is occurring, any actions by the City to revoke a license, permit, contract, loan, or grant issued by the City shall be stayed.

2. Any business entity or employee subject to the terms of this Ordinance may seek judicial review of the question of whether the City has complied with the provisions of this Ordinance or other relevant provisions of federal, state, or City law in the County Court for Dodge County, or in any other court of competent jurisdiction.

SECTION 2. CONSTRUCTION AND SEVERABILITY:

A.      The requirements and obligations of this section shall be implemented in a manner fully consistent with federal law regulating immigration and protecting the civil rights of all citizens, nationals, and aliens.

B.      If any part or provision of this Ordinance is in conflict or inconsistent with applicable provisions of federal or state statutes, or is otherwise held to be invalid or unenforceable by any court of competent jurisdiction, such part of provision shall be suspended and superseded by such applicable laws or regulations, and the remainder of this Chapter shall not be affected thereby.

SECTION 3. REPEAL:

Any ordinance or parts of ordinances of the City of Scribner in conflict herewith are hereby repealed.

SECTION 4. EFFECTIVE DATE:

This Ordinance shall be in full force and effect from and after passage and publication according to law.

PASSED December 17, 2018

Ken Thomas, Mayor

C-22

ATTEST:

City Clerk

## *CERTIFICATION*

I, Elmer Armstrong, Clerk of the City of Scribner, Nebraska, hereby certify that the foregoing is a true and complete copy of Ordinance No.571-18 of said city, passed by the City Council this 17th. day of December 2018.

City Clerk

COPY



**EXHIBIT D**

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
*National Records Center*
P.O. Box 648010
Lee's Summit, MO  64064-8010



**U.S. Citizenship
and Immigration
Services**

COW2021004654

November 10, 2021

Jane Seu
ACLU of Nebraska
134 S. 13th St. #1010
Lincoln, NE 68508

Dear Jane Seu:

This is in response to your Freedom of Information Act/Privacy Act (FOIA/PA) request received in this office on November 9, 2021 relating to (TOPIC).  Your request stated:

The ACLU seeks any records of communication received from or transmitted to an official or entity of the City of Fremont, including any agent or contractor of Fremont regarding the implementation and enforcement of the Ordinance. The request seeks any pertinent records from 2014 to present.

Additionally, the ACLU also seeks any records of communication received from or transmitted to an official or entity of the City of Scribner, including any agent or contractor of Scribner regarding the implementation and enforcement of the Scribner Ordinance. The request seeks any pertinent records from 2018 to present.

Your request is being handled under the provisions of the Freedom of Information Act (5 U.S.C. § 552). It has been assigned the following control number: COW2021004654. Please cite this number in all future correspondence about your request.

Consistent with 6 C.F.R. § 5.3(b) of the Department of Homeland Security (DHS) FOIA regulations, your request must describe the records sought in sufficient detail to enable our personnel to locate them with a reasonable amount of effort. Upon initial review, United States Citizenship and Immigration Services (USCIS) does not find that you have adequately described the records sought. In accordance with 6 C.F.R. § 5.3(c), USCIS FOIA needs clarification from you regarding the records you are requesting. To the extent possible, please provide specific information that may assist our office with identifying the requested records, such as a list of USCIS personnel whom you wish to have an email search conducted upon. You may respond with the clarification by U.S. mail or electronic mail. Please clearly mark the letter, envelope, and/or email "COW2021004654 Clarification" for our staff to track your correspondence accordingly.

In order to be considered timely, your response must be postmarked or received by electronic mail within 30 working days of the date of this letter. To aid you in adequately describing the records sought, you may contact USCIS's FOIA Public Liaison, Jennifer Piateski , for assistance at:

U.S. Citizenship and Immigration Services
National Records Center, FOIA/PA Office
P.O. Box 648010
Lee's Summit, MO  64064-8010
Telephone: (800) 375-5283
E-Mail: FOIAPAQuestions@uscis.dhs.gov

If you do not respond with clarification of the records you are requesting, your request may be administratively closed by our office in accordance with 6 C.F.R. § 5.3(c). This administrative closure

COW2021004654
Page 2

does not prejudice your ability to submit a new request for further consideration with additional information.

All FOIA/PA related requests, including address changes, must be submitted in writing. Please include the Control Number listed above on all correspondence with this office. Requests may be mailed to the FOIA/PA Officer at the PO Box listed at the top of the letterhead, emailed to FOIASIG.NRC@uscis.dhs.gov, or sent by fax to (802) 860-6908. You may also submit FOIA/PA related questions to our email address at FOIASIG.NRC@uscis.dhs.gov.

Sincerely,

Jennifer Piateski
Acting Director, FOIA Operations



**From:** Jane Seu
**Sent:** Monday, December 6, 2021 2:52 PM
**To:** FOIAPAQuestions@uscis.dhs.gov <FOIAPAQuestions@uscis.dhs.gov>;
FOIASIG.NRC@uscis.dhs.gov <FOIASIG.NRC@uscis.dhs.gov>
**Cc:** Rose Godinez <rgodinez@aclunebraska.org>
**Subject:** COW2021004654 Clarification

Good morning,

I am writing on behalf of the ACLU of Nebraska in response to clarification from USCIS FOIA under control number COW2021004654. On November 9, 2021, ACLU of Nebraska ("ACLU") requested any records of communication received from or transmitted to any official, personnel, contractor or agent of the City of Fremont regarding implementation and enforcement of the Fremont Ordinance from 2014 to present. ACLU of Nebraska also requested any records of communication received from or transmitted to any official, personnel, contractor, or agent of Scribner regarding implementation and enforcement of the Scribner Ordinance from 2018 to present. The ACLU is still seeking the clarifying information and will respond accordingly.

In the same request dated November 9, 2021, the ACLU also requested "Any records of the Memorandum of Understanding ("MOU") between DHS-USCIS and Fremont, including any and all approved and executed MOU's permitting Fremont to access the SAVE Program and Fremont's application to register with the SAVE program" and "Any records of the Memorandum of Understanding between DHS-USCIS and Scribner, including any and all approved and executed MOU's permitting Scribner to access the SAVE Program and Scribner's application to register with the SAVE program."

USCIS FOIA has not provided a response on the records of the MOU between DHS-USCIS and Fremont or the MOU between DHS-USCIS and Scribner of the initial request. Please provide these records and any response thereto to the signed below.

**Jane Seu**
Pronouns: she/her
Immigration Legal Fellow | ACLU of Nebraska
134 S. 13th St. #1010, Lincoln NE 68508
402-476-8091 ext. 107
jseu@aclunebraska.org

www.aclunebraska.org



*Admitted in Pennsylvania; admission to Nebraska bar pending
*********************************************************************************************************************
*
This message may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply E-mail that this message has been inadvertently transmitted to you and delete this E-mail from your system.



## Automatic reply: COW2021004654 Clarification

FOIAPAQuestions <foiapaquestions@uscis.dhs.gov>
Mon 12/6/2021 2:54 PM
To: Jane Seu <jseu@aclunebraska.org>

[EXTERNAL]
We have received your inquiry in the USCIS FOIAPAQuestions mailbox.  We will respond to your inquiry as soon as possible.  This mailbox is solely for the purpose of answering questions regarding USCIS Freedom of Information Act (FOIA) and Privacy Act (PA) requests.

**Make Your Next Request Faster, Easier Online** using our new Freedom of Information Act Records SysTem (FIRST)**.** Whether you are a U.S. citizen, an applicant, or an immigration attorney, our online Freedom of Information Act (FOIA) and Privacy Act (PA) services are a far more efficient way for you to receive records. Making your future FOIA and PA requests online, delivers your records faster and helps us improve our operations to better serve you, the immigration community, and the American people. If you wish to submit a new FOIA/PA request or to check on the status of a previously submitted request, please visit www.uscis.gov/FOIA.

As this reply is automatically generated, do not respond to this notification.

F-1

EXHIBIT
G

## Re: COW2021004654 Clarification

Jane Seu <jseu@aclunebraska.org>
Mon 1/10/2022 10:36 AM

To: FOIAPAQuestions@uscis.dhs.gov <foiapaquestions@uscis.dhs.gov>;FOIASIG.NRC@uscis.dhs.gov
<FOIASIG.NRC@uscis.dhs.gov>

Good morning,

I submitted the below clarification and request on December 6, 2021 and have not yet received a
response. Please provide an updated response or by when a response can be expected.

Best,

**Jane Seu**
Pronouns: she/her
Immigration Legal Fellow | ACLU of Nebraska
134 S. 13th St. #1010, Lincoln NE 68508
402-476-8091 ext. 107
jseu@aclunebraska.org

www.aclunebraska.org



*Admitted in Pennsylvania; admission to Nebraska bar pending
*****************************************************************************************************
*
This message may contain information that is confidential or legally privileged. If you are not
the intended recipient, please immediately advise the sender by reply E-mail that this message
has been inadvertently transmitted to you and delete this E-mail from your system.